FANNY GRIFFITH *vs.* WILLIAM DOUGLASS.

Oxford. Opinion May 31, 1882.

*Chattel mortgage. After-acquired property.*

A mortgage of furniture then in a dwelling house, and of that afterwards to be purchased, conveys a valid title to that only of which the mortgagor was then the owner.

The mortgage being void as to after-acquired property a mere delivery of the same by the mortgagor to the mortgagee, the former retaining the possession and control, does not transfer a valid title as against attaching creditors. In such a case the mortgagee cannot hold the subsequently purchased property

as against attaching creditors, because the mortgage when recorded did not embrace it. He cannot hold it as a pledge because he did not retain the possession.

ON REPORT.

Trespass against an officer.

The case and material facts are stated in the opinion.

*David Hammons and Enoch Foster, Jr.* for the plaintiff.

*R. A. Frye, and Black and Holt,* for the defendant.

APPLETON, C. J. This is an action of trespass against the sheriff for the taking and carrying away by his deputy of certain goods and chattles to which the plaintiff claims title. The defendant justifies their seizure under writs in favor of Orange C. Littlefield and others against Joseph F. Barden, whose property he alleges them to be.

Joseph F. Barden and wife then residing in Lewiston but intending soon to remove to Bethel and being indebted to the plaintiff, on the twentieth of May, 1873, executed a mortgage to secure such indebtedness of "the following described property, viz : all the furniture and furnishings *now* owned by us or to be owned by us to be used and kept at the Chandler house, so called, at Bethel, in the county of Oxford, intending hereby to convey all furniture and furnishings of every description, consisting of beds, bedding, tables, chairs, carpets, stoves, &c., &c., now owned or to be owned by us, . . . provided also that it shall and may be lawful for said Joseph and Georgiana Barden (the wife) to continue in the possession of said property without denial or interruption by said Griffith until condition broken."

The mortgage was recorded in Bethel, where the parties then resided, on the twenty-seventh of September, 1878, and in Lewiston on the twenty-eighth of September, 1878. The attachments, which constitute the trespass complained of, were made on the thirtieth of the same September.

The suit is for goods purchased by the mortgagors after the date of the mortgage. The plaintiff is an aunt of Mrs. Barden, whose husband kept the Chandler house, and boarded there. As articles were purchased for the house Mr. Barden would

deliver the same to the plaintiff under the mortgage · as security. The delivery being thus made, he remained in the use and control of the same. The question presented for determination is whether the plaintiff has a good title as to the goods purchased subsequently to the mortgage as against attaching creditors.

By R. S., c. 91, § 1, "no mortgage of personal property, to secure payment of more than thirty dollars, shall be valid against any other person than the parties thereto, unless possession of such property is delivered to and retained by the mortgagee or the mortgage is recorded by the clerk of the town or plantation, organized for any purpose, in which the mortgagor resides."

The object to be attained by requiring the recording of mortgages of personal property is the same as that in providing for· the registration of mortgages of real estate. The same general principles are alike applicable in each case. The design is to give notice to the public of all existing incumbrances upon real or personal estate by mortgage. Hence it is obvious that the property mortgaged, whether real or personal, the person mortgaging, to whom the mortgage is made and the debt or claim to be secured should be fully disclosed and made apparent of record. It would necessarily follow that the mortgage could only embrace what was *in esse*, what could then be taken possession of and the possession retained, — what then could be described as existing and what in case of litigation could be identified as the same as that described and that what was not *in esse* and not owned by the mortgagor could not be mortgaged, because there was nothing ·the mortgagor could deliver or the mortgagee receive and to which the mortgage could attach. If the mortgage· is held to cover what was mortgaged and what was *not* mortgaged because not *in esse* and not then owned by the mortgagor, then the notice to the public, which was the primary object of the statute, conveys no trustworthy or reliable information. The mortgage may cover whatever is capable of being mortgaged, not at its date, but whatever the mortgagor might at any subsequent time acquire.

The rights of parties are to be determined by the statute. ·To be protected the mortgagee must take delivery and retain

possession of the mortgaged property or have the mortgage recorded, otherwise his claim will not be "valid against any other person than the parties thereto." It is not enough that there be delivery but there must be retention of the property mortgaged. But there can neither be delivery nor retention of such property unless the mortgagor has the same to deliver. Delivery by the mortgagor and retention by the mortgagee of the property mortgaged are the statutory equivalents of recordation. Whatever delivery and retention of possession will enable the mortgagee to hold will be equally held by the recorded mortgage. But what cannot be delivered and retained cannot be recorded as what is to be mortgaged. The rights of the parties are statutory. The statute thus making the one the equivalent of the other, the record is valid only to protect goods which at the giving of the mortgage could be delivered and retained. Consequently the mortgage cannot be held to secure after purchased goods, whatever may be its language.

Such is the uniform and unvarying decisions of courts of common law. In *Head* v. *Goodwin*, 37 Maine, 181, it was decided that a grant of goods which did not *then* belong to the grantor was void. In *Chapin* v *Cram*, 40 Maine, 561, the mortgage provides "that all drugs, medicines, wares, merchandise and fixtures of every description which may be hereafter purchased to replace any of those then in the store, shall be held for the payment of the sums hereafter named, in the same manner as those now in the store, as also all additions to said stock." "It is quite clear" observes TENNEY, J., in delivering the opinion of the court, "that the additions to said stock obtained by the mortgagor, after the execution of the mortgage to the defendant, without any further act would confer no rights therein. *Lunn* v. *Thornton*, 1 Man. Gran. and Scott, 383 ; *Jones* v. *Richardson*, 10 Met. 481 ; *Head* v. *Goodwin*, 37 Maine, 181. To purchase such additions to the stock, the mortgage constituted no agency in the mortgagor." That that is the rule at common law is conceded in *Morrill* v. *Noyes*, 56 Maine, 458, and in *Emerson* v. *E. & N. A. Railway*, 67 Maine, 391, while as between the parties to the mortgage, the right of the mortgagee to after purchased goods would be upheld. *Allen* v. *Goodnow*, 71 Maine, 420.

The general current of authority is in accord with views above expressed. It was held in *Jones* v. *Richardson*, 10 Met. 481, that a grant of goods which are not in existence or which do not belong to the grantor at the time of executing the deed, is void, unless the grantor ratify the act by some *new* act done by him with that view, after he has acquired property therein. In *Barnard Eaton*, 2 Cush. 295, by the terms of the mortgage, the mortgagor was allowed to sell the goods mortgaged, others of equal value being substituted therefor, it was held that the mortgage could not apply to goods intended to replace those which were sold. "A mortgage," remarks SHAW, C. J., "is an executed contract; a present transfer of title, although conditional and defeasible, it can only therefore bind and affect property existing and capable of being identified *at the time* it is made and whatever may be the agreement of parties, it cannot affect property afterwards to be acquired by the mortgagor." In *Codman* v. *Freeman*, 3 Cush. 306, it was decided that a stipulation in a mortgage of personal property, that after acquired property should be subject to such mortgage, does not bind property subsequently purchased. These views were re-affirmed in *Chesley* v. *Josselyn*, 7 Gray, 489; and *Moody* v. *Wright*, 13 Met. 17; and in *Chace* v. *Denny*, 130 Mass. 566. In *Williams* v. *Briggs*, 11 R. I. 476, it was held in an elaborate opinion by DURFEE, C. J., that at common law a mortgage of subsequently acquired property would transfer no title to the same. In *Ranlett* v. *Blodgett*, 17 N. H. 305, referring to the subject under consideration, PARKER, C. J., says: "If this doctrine were admitted, a mortgage of personal property would be like a kaleidoscope, in that the forms represented would change at every turn; but, unlike that instrument, in that the materials would not remain the same." In *Gardner* v. *McEwen*, 19 N. Y. 123, it was decided that a mortgage of all the goods of a specified description then in a store, or that thereafter might be brought there, though void as to the latter, might be good as to the rest. In *Hamilton* v. *Rogers*, 8 Md. 301, it was held that a mortgage of goods in a store, "together with all the renewals and substitutions for the same in any part or parts thereof," did not convey subsequently

acquired goods so as to entitle the mortgagee to an action at law against the party seizing them. So in Kentucky it was held that a mortgage of future acquired chattels is valid only when the property mortgaged may be regarded as a part of or accretion to the property in the actual or legal possession of the mortgagor at the time of making the mortgage. *Wilson* v. *Seibert*, 8 Am. Law Reg. (N. S.) 608. The same rule is recognized in New Jersey. *Looker* v. *Pickwell*, 38 N. J. Law, 253. It was so held in *Parker* v. *Jacobs*, 14 S. C. 112.

While at common law the mortgage covers the existent property of the mortgagor and does not transfer any right to after acquired property, it is otherwise in equity. Though that court recognizes the rule of the common law, yet it holds such conveyance operative as an executory agreement, binding on the property when acquired. The mortgagor holds the property as trustee and equity enforces the trust. In some cases the decision rests upon the grounds of an equitable lien. In *Mitchell* v. *Winslow*, 2 Story, 630, it is said by STORY, J., "that whenever parties, by their contract, intend to create a positive lien or charge either upon real or personal property, whether then owned by the assignor or contractor or not, or if personal property, whether it is then *in esse* or not, it attaches in equity as a lien or charge upon the particular property as soon as the assignor or contractor acquire a title thereto, against the latter and all persons asserting a claim thereto under him, either voluntarily or with notice or in bankruptcy." But without particularly considering the different reasons given in equity in support of its exercise of jurisdiction, it is sufficient to remark that in all cases it recognizes the rule at common law as in full force.

But, though, this disposition of after-acquired property is *per se* inoperative, "such disposition," remarks TINDAL, C. J., in *Lunn* v. *Thornton*, 1 Man. Gran. and Scott, 383, "may be considered as a declaration precedent, which derives its effect from some *new* act of the party after the property is acquired." But the *new* act must be an act done by the grantor for the avowed object and with the view of carrying the former grant or disposition into effect. "Lord BACON's language is," continues the Chief Justice, "there must be some *new* act or conveyance, to give life

and vigor to the declaration precedent, which evidently imports more than the simple acquisition of the property at a subsequent time, which, if sufficient, would render the rule itself altogether inoperative; but points at some *new* act to be done by the grantor in furtherance of the original disposition." In that case there being no new act done by the grantor indicating his intention that the goods should pass under the former bill of sale, the case was held to fall under the general rule.

In the case at bar, the subsequently purchased goods were in the Chandler House commingled with those there at the date of the mortgage; the plaintiff having the mortgage was residing as a boarder in the house. The mortgagor delivered the newly purchased goods to the plaintiff as security under the mortgage, but retained the possession and control of the same "without denial or interruption" on her part by the express terms of the mortgage.

The inquiry then arises whether here is any *new* act, within the decisions in *Lunn* v. *Thornton*, and *Jones* v. *Richardson*, which perfects the title of the mortgagee in the after-acquired goods. The mortgage, though recorded, was only available as between the parties to it. The possession of the mortgagee was instantaneous. It instantly reverted to the mortgagor. Now, as has been seen, the plaintiff acquired no title under the mortgage. There is no compliance with the other statutory alternative, possession and retention of the mortgaged property by the mortgagee. The new act was merely momentary, which, there being no retention of possession, conveyed no title under the statute. It was no act which conveys title.

In *Jones* v. *Richardson*, the defendant claimed to hold under a mortgage intended to hold after-acquired goods. "He did not prove," observes DEWEY, J., "nor offer to prove, any act done by the mortgagor, after the mortgage deed was executed, by which he ratified the same as to subsequently acquired property. All he offered to prove was that he had taken possession of the goods before the attachment. But this evidently was irrelevant, as it was held to be by the arbitrator. But if he had proved that the mortgagor had delivered possession to him of the goods in

question, to hold the same under the mortgage, that would not have availed him against the plaintiff, although it might be good against the mortgagor." The court then refers to the statute of Massachusetts, which is similar to that in this State, and then proceeds as follows : "Now it is clear, we think, that the record of the mortgage deed is no sufficient notice of a legal incumbrance as to subsequently acquired property ; because by law, no such property could be sold or conveyed thereby ; and it would furnish no notice that any property would be afterwards purchased, or, if purchased, that any act would be done to ratify the grant in that respect. As to such property, therefore, the mortgage could not be valid, except as between the parties thereto, unless such goods were delivered by the mortgagor to the mortgagee, with the intention to ratify the mortgage and the mortgagee, *retained open possession of the same* until the time of the attachment." This case determines the case at bar. There was a formal delivery, but no retention of possession of the subsequently purchased goods, in that case nor in this. In *Brown* v. *Thompson*, 59 Maine, 373, a mortgage was given to secure after-acquired goods as well as those then in the store. The goods were removed to another store. An indorsement was then made to the effect that the mortgage should cover the stock removed. The mortgage with the indorsement was recorded. Here was a *new* act, the indorsement on the mortgage, which becoming part of the mortgage and recorded, conveyed a good title to the goods in the store when the indorsement was made. In *Rowley* v. *Rice*, 11 Met. 333, there was a mortgage of after-acquired goods, which before the attachment were delivered to and retained by the mortgagee, with authority to sell the same. "The facts show," remarks SHAW, C. J., "all the elements of a new, distinct and substantive agreement to hypothecate the after-acquired goods, sufficient of itself to give title." The plaintiff held title as pledgee and not as mortgagee ; the court adding that when an act is voidable, it may be ratified, but if actually void and the act of ratification be of itself sufficient to convey title, it will enure as an original act. In *Moody* v. *Wright*, 13 Met. 17, the same question again came before the court for consideration, and with the same result. "A stipulation that future acquired property shall be holden as

security for some present engagement," observes DEWEY, J., "is an executory agreement of such a character, that the creditor with whom it is made may, under it, take the property *into his possession*, when it comes into existence, and is the subject of transfer by his debtor, and *hold* it for his security; and whenever he does so take into his possession before an attachment has been made of the same, or any alienation thereof, such creditor, under his executory agreement may hold the same; but until such an act done by him, he has no title to the same; and, that such act being done, and the possession thus acquired, the executory agreement of the debtor authorizing it, it will then become holden by virtue of a valid lien or pledge." The authorities are uniform in requiring not merely delivery but retention of the property delivered as indispensable to the perfection of the mortgagee's title, whether the mortgage purports to convey after-acquired property, or should be unrecorded. *Wright* v. *Tetlow,* 99 Mass. 397.

The possession of the plaintiff was but instantaneous. It was resumed by the mortgagor. But a concurrent possession by the mortgagor and mortgagee is insufficient. There must be a substantial change of the possession. The cases of *Flagg* v. *Pierce,* 58 N. H. 348, and *Sumner* v. *Dalton,* 58 N. H. 296, are precisely in point. "Constructive possession," observes BOARD-MAN, J., in *Crandall* v. *Brown,* 25 Hun. 461, "cannot be taken under a chattel mortgage. The right to possession is by virtue of the contract, and not as in an execution by virtue of the law. Possession must be taken, in fact . . a chattel mortgage is not an execution. Possession cannot be taken by words and inspection." In *National Bank* v. *Sprague,* 20 N. J. Eq. 27, ZABRISKIE, C. J., in referring to the statute of New Jersey and a mere nominal possession, says, "such possession does not satisfy the object nor comply with the words of the act; they required an *actual* and *continued* change of possession; these words would seem to be inserted expressly to provide against such a sham as this."

*Judgment for defendant.*

WALTON, DANFORTH, VIRGIN and SYMONDS, JJ., concurred.

BARROWS, J., concurred in the result.