CHARLES W. DEXTER *vs.* MILFORD A. CURTIS and others.

Androscoggin.   Opinion May 4, 1898.

*Chattel Mortgage.   After-Acquired Property.   Sales to Creditors.*

A chattel mortgage does not ordinarily pass the legal title to after-acquired property, without some new act sufficient for the purpose, like a delivery to the mortgagee and retention of the same by him, or a confirmatory writing properly recorded.

But the rule is subject to this exception, that if the mortgage contains a stipulation authorizing the mortgagor to sell any portion of the mortgaged property, and requiring him to replace that sold by purchasing with the proceeds other articles of a like kind, which are to be subject to the lien of the mortgage, then the mortgage will have that effect, and will pass to the mortgagee the legal title to the property so acquired.

The mortgage claimed under by the plaintiff in this case contains such a stipulation, *and it is considered by the court,* the case coming to the law court upon report, that the evidence fairly shows that the goods claimed to have been converted by the defendant, were either in the mortgagor's store as a part of his stock in trade when the mortgage was executed, or were subsequently purchased by him for the purpose of replenishing his stock and paid for with the proceeds of the goods sold; and that in either case the mortgage was sufficient to pass the legal title to the plaintiff.

The defendants obtained these goods from the mortgagor, with both actual and constructive notice of the mortgage, for the purpose of reducing his indebtedness to them, and credit was given him for the goods upon their account.

*Held;* that the title to the goods thus obtained by the defendants did not pass to them; that while the mortgagor had the right to sell or to exchange any portion of his stock, under the terms of the mortgage, he did not have the right to sell these goods to his creditors in payment of past indebtedness, and that any person who obtained them of the mortgagor, for this purpose, did not acquire title to them as against the mortgagee.

ON REPORT.

The case appears in the opinion.

*Henry W. Oakes,* for plaintiff.

*Tascus Atwood,* for defendants.

The plaintiff saw fit at the outset to grant the mortgagor the right to "barter, sell and exchange" his stock, not even restricting him to "retail" or the "usual course of trade" and the law will not now allow him when he cannot demonstrate his claim to come in and at random, demand satisfaction from one who has dealt with his mortgagor. *Griffith* v. *Douglass,* 73 Maine, 532; *Jones* v. *Richardson,* 10 Met. 481.

SITTING: PETERS, C. J., EMERY, HASKELL, WISWELL, STROUT, JJ. SAVAGE, J., having been of counsel, did not sit.

WISWELL, J. Action of trover for the conversion of a portion of a stock of goods. The case comes to the law court upon report.

For the purpose of proving title in himself to the articles alleged to have been converted, the plaintiff introduced in evidence a chattel mortgage given to him by one Edwin F. Goss, which contains the following description of the property mortgaged: "All my stock in trade, consisting principally of confectionery, fruit and cigars, and all my store furniture, fixtures and appliances, excepting my soda fountain and appliances, and including all machinery and appliances for making ice cream, now contained and used in the store and basement occupied by me situated in said Auburn on the southerly side of Court Street and known as No. 50 on said street."

The mortgage also contained the following provision: "It is mutually agreed and understood by the parties to this mortgage that the said Edwin F. Goss shall be allowed to barter, sell and exchange the above named stock and with the proceeds purchase other goods of a like kind which, together with all additions to said stock, shall be equally subject to the lien of this mortgage."

It has been frequently decided in this state that a chattel mortgage does not ordinarily pass the legal title to after-acquired property, without some new act sufficient for the purpose, like a delivery to the mortgagee and retention of the same by him, or a confirmatory writing properly recorded. *Sawyer* v. *Long*, 86 Maine, 541, and cases there cited. But the rule is subject to this exception, that if the mortgage contains a stipulation authorizing the mortgagor to sell any portion of the mortgaged property, and requiring him to replace that sold by purchasing with the proceeds other articles of a like kind, which are to be subject to the lien of the mortgage, then the mortgage will have that effect, and will pass to the mortgagee the legal title to the property so acquired. *Abbott* v. *Goodwin*, 20 Maine, 408; *Sawyer* v. *Long*, supra.

While the evidence in this case is not as definite and as exact as could be desired, we think that the testimony of Goss, the mortgagor, which is entirely uncontradicted upon this question, fairly shows that the goods claimed to have been converted by the defendant were either in the mortgagor's store as a part of his stock in trade when the mortgage was executed, or were subsequently purchased by him for the purpose of replenishing his stock and paid for with the proceeds of the goods sold.

Are the defendants liable for a conversion of these goods? They were creditors of Goss. They had both constructive and actual notice of the mortgage. They obtained these goods from Goss for the purpose of reducing his indebtedness to them, and credit was given him for the goods upon their account. The title to goods thus obtained did not pass to them. While the mortgagor had the right to sell or to exchange any portion of his stock, he did not have the right to sell these goods to his creditors in payment of past indebtedness. Any person who obtained these goods

of the mortgagor for this purpose, did not acquire title to them as against the mortgagee. The refusal to deliver the goods thus obtained upon demand by the plaintiff was a conversion.

There is no merit in the claim that a portion of these goods was received by the defendants in exchange for other goods which they at the time, or as a part of the transaction, delivered to the mortgagor, because the case shows that the mortgagor paid in cash for all goods received during the period that the defendants were obtaining the articles sued for.

According to the testimony upon the part of the defense, the price agreed upon, and for which the mortgagor received credit, was $134.47. The defendants also had of the mortgagor a quantity of cigars, the price of which was not settled by the parties to the transaction, but the value of which was estimated by one of the defendants to be $52.65. For these two amounts, together with interest from the time of the demand and refusal, the plaintiff should have judgment.

*Judgment accordingly.*