JAMES R. THURLOUGH *vs.* WILLIS R. DRESSER.

Aroostook.    Opinion November 26, 1903.

*Landlord and Tenant. Lease.* Imperfect description of premises. *Record,*
Notice to third parties.   *Chattel Mortgage.    R. S. (1883), c. 91, § 1.*

1.   Third persons are chargeable with notice of no more than they can ascertain from the record of a mortgage, or from being put upon their inquiry by the record.

2.   Notice of the mortgage of a crop to be planted in 1899 is not notice of a crop planted or to be planted in 1900.

3.   A lease of "twelve acres of a farm in Caswell" with the crops to be grown upon it the "ensuing season," but containing no more particular description of the land, was given to the defendant, as security, March 22, 1900. It was dated by mistake, "March 22, 1899," and was recorded, as dated, in the town clerk's office, April 11, 1900.   The lessor, on June 29, 1900, gave the plaintiff a chattel mortgage of the crops then growing upon a farm in Caswell which was particularly described.   This mortgage was duly recorded July 4, 1900.   The defendant's lease was intended to cover a portion of the farm described in the plaintiff's mortgage.   Potatoes growing on "the twelve acres" at the date of the plaintiff's mortgage were taken by the defendant.

4.   Assuming that the defendant's lease, properly construed, is an equitable mortgage, *it is held,* that the record of the lease, although prior in time to the plaintiff's mortgage, was insufficient to give the plaintiff constructive notice of the defendant's equitable lien or claim.   It was too indefinite in the description of the land, and was actually misleading as to time.

5.   It follows that the plaintiff shows a superior  title to the potatoes in question.

Facts agreed.    Judgment for plaintiff.

Trover by mortgagee under a chattel mortgage for the conversion of potatoes by the landlord who claimed title under a lease.

The case appears in the opinion.

*H. W. Trafton,* for plaintiff.

*W. B. Hall,* for defendant.

SITTING: WISWELL, C. J., EMERY, STROUT, SAVAGE, PEABODY, SPEAR, JJ.

SAVAGE, J.   Trover for potatoes.

On February 24, 1900, the plaintiff in writing agreed to convey to one Bennett certain real estate in Caswell Plantation, on condition that Bennett should first pay to the plaintiff, $75 January 1, 1901, $75 March 15, 1901, and should make five other payments at other specified dates beginning March 15, 1902, and ending March 15, 1906.   The contract, as we construe it, provided that the plaintiff should convey the premises to Bennett after the first two payments were made, and that Bennett should then mortgage back the premises to the plaintiff to secure the payment of the five remaining installments of the purchase price, and interest annually.   Bennett on his part gave seven notes for the seven installments of the purchase price, and agreed to execute and deliver to the plaintiff, on or before June 15th of each year until the first two notes with all annual interest accrued had been paid, a first chattel mortgage upon all the crops then planted and growing upon the premises to secure the payment of those two notes and annual interest.   Bennett entered into possession under this agreement.   Afterwards on March 22, 1900, Bennett leased twelve acres of "a farm in Caswell" to the defendant, the lease to run until January 1, 1901.   The land intended to be leased was a part of that embraced in the foregoing agreement.   The lease, by a. clerical error was dated March 22, 1899, and was recorded, as written, April 11, 1900, in the clerk's office at Caswell Plantation. In the lease Bennett agreed to plant, cultivate and harvest a crop of potatoes upon the land, and deliver them to the defendant, who was to market them, and with the proceeds, reimburse himself for the price of certain fertilizer which he had sold to Bennett, and pay Bennett the balance.   The lease, in fact, was given to the defendant as security for the price of the fertilizer.   No potatoes were growing on the land at the date of the lease.   On June 29, 1900, Bennett, in accordance with his agreement with the plaintiff, made a chattel mortgage to him of the crops, including potatoes, then growing upon the premises which the plaintiff had agreed to convey to Bennett.

This mortgage was recorded in the clerk's office at Caswell Plantation, July 4, 1900. In the season of 1900, Bennett raised a crop of potatoes on the land leased to the defendant, and delivered the same to the defendant on the premises, in the harvest time, and after the chattel mortgage to the plaintiff had been recorded. The defendant carried them away, and to recover their value the plaintiff brings this action. The original agreement between the plaintiff and Bennett was not recorded anywhere. The plaintiff "had no other notice of the lease to the defendant than that contained in the public record." Whether this expression in the agreed statement means that he had actual notice of the record, but no other notice, or that he had no actual notice, either of the mortgage or of its record, is not clear. We think it is immaterial which it is.

Upon these facts, the plaintiff claims title to the potatoes under his mortgage of June 29, 1900, made and recorded while they were growing. The defendant claims title under his lease of March 22, 1900, made and recorded before the potatoes were planted. He claims that the lease was in effect an equitable mortgage, and sufficient to give rise to an equitable title when the potatoes came into being. *Kelley* v. *Goodwin*, 95 Maine, 538. Assuming that the defendant's contention is correct that a lease of land and crops to be grown upon it, given as security, may be regarded as an equitable mortgage, still we think the defendant cannot prevail in this case, notwithstanding his lease or mortgage was recorded first.

By Revised Statutes (1883), ch. 91, § 1, it is provided that "no mortgage of personal property is valid against any other person than the parties thereto, unless possession of such property is delivered to and retained by the mortgagee, or the mortgage is recorded by the clerk of the city, town or plantation organized for any purpose in which the mortgagor resides, when the mortgage is given." To shut out the claim of a subsequent mortgagee, an equitable mortgage must be recorded, the same as a legal one. *Kelley* v. *Goodwin*, supra. The purpose of the statute clearly is that all persons may have notice of the mortgage, of the property mortgaged, and of the character and extent of the incumbrance created. The mere record of a valid mortgage gives constructive notice to all. All are presumed to know

its contents, for any one interested can obtain knowledge by examining the record. But a record is not constructive notice of more than the record itself discloses. Third persons are chargeable with notice of no more than they can ascertain from the record or from being put upon their inquiry by the record. *Partridge* v. *Swazey*, 46 Maine, 417.

If we apply these principles to the defendant's lease and record, it will appear that they were wholly insufficient to give notice of the truth. When the plaintiff took his mortgage of the growing crops in June, 1900, he was entitled to know, by record at least, whether there was any prior mortgage of the same crops. The records if consulted would have shown only that in the lease dated (though by mistake) March 22, 1899, Bennett was asserted to be in possession of a farm in Caswell, twelve acres of which he leased to the defendant "to be planted with potatoes in the ensuing season." There is nothing in the lease to indicate that the farm was the one the plaintiff had agreed to sell Bennett. The description would apply to any other farm in Caswell as well. And the crop mortgaged was the one to be planted the "ensuing season," namely, the season of 1899. Notice of the mortgage of a crop to be planted in 1899 is not notice of a crop planted or to be planted in 1900. And if we should say, which we do not, that the fact that the record of the lease showed that it was to run to January 1, 1901, should have made an investigator of the records suspicious that there was error in the date of the lease, and that the lease properly covered the season of 1900,—and so put him upon inquiry,—how should he ascertain which one of the many farms in Caswell he should inquire about? *Stedman* v. *Perkins*, 42 Maine, 130. The case at bar is clearly distinguishable from *Partridge* v. *Swazey*, supra. We think the lease in this case and its record, are altogether too indefinite and uncertain to give notice to the plaintiff that the crop of potatoes of which he was taking a mortgage in June, 1900, had already been mortgaged to the defendant. The defense fails.

In accordance with the stipulation of the parties, the entry is to be,

*Judgment for the plaintiff for $119 and interest*
*from the date of the writ.*