HARRY B. BEAL

*vs.*

UNIVERSAL C. I. T. CREDIT CORPORATION

Aroostook.   Opinion, July 27, 1951.

*David Solman,*

*Hutchinson, Pierce,*

*Atwood & Scribner,* for plaintiff.

*Donald N. Sweeney,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

FELLOWS, J.   This is an action of assumpsit to recover the sum of $1,438.67 paid by the plaintiff to the defendant for a certain conditional sales contract securing a Ford

truck which contract was alleged in the declaration not to be a first lien as represented. The case was heard by the justice presiding in the Superior Court for Aroostook County on an agreed statement. It now comes to the Law Court on plaintiff's exceptions to the court's finding for the defendant.

This is a brief summary of the agreed facts: On December 4, 1948 one Lloyd K. Maxwell gave to the Caribou Motor Company a conditional sales contract on a Ford truck he was purchasing of Caribou Motor Company, and he then took delivery of the truck from the Caribou Motor Company. This conditional sales agreement provided that title was to remain in the Motor Company (or Universal C. I. T. Credit Corporation if assigned to it) until the truck was fully paid for. Several days previously, however, on November 29, 1948, Lloyd K. Maxwell had given to the Aroostook Trust Company a chattel mortgage in the sum of $2,153.25 (with full covenants of title as "the true and lawful owner," and with the usual warranties against claims of others, and the right to take possession for non-payment) secured in part by this Ford truck that he contemplated buying, together with other personal property. The agreed statement of facts says that Maxwell represented to the Trust Company that the proceeds of his loan from the Trust Company would be used to purchase the truck, but the chattel mortgage does not indicate that the truck was to be after acquired.

The conditional sales contract of December 4, 1948, given by Maxwell, was assigned by Caribou Motor Company to the defendant Universal C. I. T. Credit Corporation, but was not recorded. The chattel mortgage of November 29, 1948, given by Maxwell to the Trust Company five days before the sales agreement, and before he had any title, claim, or possession to the truck, was recorded by the Trust Company on December 10, 1948.

On May 9, 1949 the defendant C. I. T. Credit Corporation represented to the plaintiff, Harry B. Beal, that it had a sales agreement which it said was a first lien on the truck, and the plaintiff purchased of defendant the conditional sales contract for $1,438.67.

On June 18, 1949 the Aroostook Trust Company, without knowledge of the sales contract, took possession of the truck, claiming under its chattel mortgage. On July 7, 1949, after taking possession, the Aroostook Trust Company assigned its chattel mortgage to Harry B. Beal the plaintiff.

The Caribou Motor Company had no knowledge that there was a mortgage from Maxwell to the Trust Company describing its truck and dated November 29, 1948, because the truck was then owned by Caribou Motor Company, and in its possession. The chattel mortgage was given by Maxwell to the Trust Company before his purchase under the sales contract, and the first knowledge of the Trust Company that there was a sales contract was when it took possession of the truck on June 18, 1949.

In giving judgment to the defendant the decision of the justice presiding was "that the conditional Sales Contract signed by Lloyd K. Maxwell on Dec. 4, 1948 to the Caribou Motor Company, and assigned by the Caribou Motor Company to the Defendant, it not having recorded said Constitutional Sales Contract, and assigned by the Defendant to the Plaintiff, constitutes a first lien on said truck, all assignments having been made for a valuable consideration and that it takes precedence over the mortgage given by Lloyd K. Maxwell to the Aroostook Trust Company." To this decision the plaintiff took exceptions.

The situation appears to be that a chattel mortgage on a truck was given by one who had neither title nor possession, and the mortgage does not state that it was intended that the loan would be used to purchase the truck. The truck

was not purchased by the proceeds of the loan, but was purchased several days later under a conditional sales contract. The chattel mortgage is recorded but the sales agreement is not. The question presented, according to the briefs, is whether the unrecorded conditional sales contract takes precedence over a recorded chattel mortgage when the mortgagor had neither title, possession, nor right to possession. There is another question, and that question is whether the chattel mortgage, obtained by the bank as mortgagee, gave any valid rights in and to this truck, without regard to the sales agreement.

Under the common law a man could bargain with his own personal property as he desired, and could deliver possession and reserve title in himself until fully paid for, without notice to the world through any public recording of the agreement. *Tibbetts* v. *Towle,* 12 Me. 341. The statute now provides that no agreement, that personal property bargained and delivered to another shall remain the property of the seller until paid for, is valid except as between the parties unless it is recorded in the town or city where the purchaser resided. Revised Statutes (1944), Chapter 106, Section 8. This statute is interpreted as meaning that an unrecorded conditional sales contract is not valid against the lawful claims of third persons. As between the original parties it must be definite, in writing, and signed by the person to be bound thereby. As to third persons it must be recorded. *Gould* v. *Huff,* 130 Me. 226. It follows that if a sales agreement is good between the parties, and no other person has a valid claim, such as a true owner, an attaching creditor, a mortgagee holding valid legal mortgage, a trustee in bankruptcy, and the like, it is good against everyone.

A chattel mortgage can be given only of chattels actually in existence and actually belonging, or potentially belonging, to the mortgagor. This rule is subject to some exceptions, statutory and otherwise, but unless a case comes with-

in one of the well established exceptions, a mortgagor cannot mortgage property that he does not own. At common law there must be a provision in the mortgage and some new act sufficient for the purpose in order to pass after acquired property, like delivery to the mortgagee or by a confirmatory writing properly recorded. *Griffith* v. *Douglass,* 73 Me. 532. A chattel mortgage on a stock of goods in a store may provide in the mortgage that replacements are subject to the lien. *Dexter* v. *Curtis,* 91 Me. 505; *Sawyer* v. *Long,* 86 Me. 541. "Including all cars, engines and furniture that have been or may be purchased." *Morrill* v. *Noyes,* 56 Me. 458. In the case of *Burrill* v. *Whitcomb,* 100 Me. 286, relied on by the plaintiff, the chattel mortgage was of property consisting of stock in trade contained in a store of the mortgagors together with all stock in trade which might, from time to time, be added. The tea, for which suit was brought, was not owned by the mortgagors at the time of the execution of the mortgage but was later purchased as a part of their stock for the purpose of carrying on their business. It was held that the mortgagee was entitled to take possession of the tea as after acquired stock in trade in accordance with the express terms of the mortgage.

Sections 7, 8, 9 of Chapter 164 of the Revised Statutes (1944) provide that a person may mortgage crops growing or to be grown, and also that a chattel mortgage shall constitute a valid lien on any property described in the mortgage to be purchased with the proceeds of a loan, and for a lien on substitutions for or replacements of property described, when acquired by the mortgagee.

A mortgage is a sale to the extent of carrying title, not an agreement to sell. A mortgage conveys title to the vendee which may be defeated by payment by the vendor. A conditional sales agreement retains title in the vendor which may be defeated by payment by the vendee. *DeLaval Separator Co.* v. *Jones,* 117 Me. 95; *Campbell* v. *Atherton,* 92

Me. 66. The terms of the chattel mortgage must be sufficient to meet all the terms of the contract and the rights of third parties definitely known from inspection of the record. *Williams* v. *Noyes & Nutter Manufacturing Co.,* 112 Me. 408; *Morrill* v. *Noyes,* 56 Me. 458, 466. Third persons are chargeable with notice of no more than they can ascertain from the record, or from being put upon their inquiry by the record. *Thurlough* v. *Dresser,* 98 Me. 161; *Partridge* v. *Swazey,* 46 Me. 414; *Griffith* v. *Douglass,* 73 Me. 532; *Cadwallader* v. *Shaw,* 127 Me. 172.

In the case at bar there was no complete agreement in the mortgage. The mortgage makes no mention of any property to be acquired. The mortgage falsely states that the mortgagor is the owner of the truck. He was not the owner and the truck was not in his possession. No mention is made in the mortgage that it was intended that the proceeds of the loan was to be used to purchase the truck described. The agreed statement says there was an oral understanding between the parties that the loan was to be used to purchase the truck, but the mortgage does not so state. The record of the mortgage in the case at bar would give no legal notice to anyone that the mortgagor intended to purchase the truck then belonging to the Motor Company and at that time in the Motor Company's possession. The chattel mortgage transferred title to any personal property described therein that was then owned by Maxwell as mortgagor, but it transferred no title and gave no valid claim to the Ford truck mentioned therein, because the truck was not owned by Maxwell and there was no legal provision in the mortgage relative to acquisition thereafter.

The court below, giving judgment to the defendant, was correct.

*Exceptions overruled.*