## INDUSTRIAL CREDIT COMPANY

### v.

### Andre E. CUSHING, Jr.

Supreme Judicial Court of Maine.

Aug. 3, 1966.

Edward H. Keith, Bangor, for plaintiff.

Peter N. Kyros, Portland, Frederick G. Fisher, Jr., Boston, Mass., for defendant.

WEBBER, Justice.

On appeal on an agreed statement of facts. In the course of bankruptcy proceedings the owners of certain personal property on July 10, 1961 sold the same to one Halpern by a conditional sale contract. Halpern received the funds required to finance the sale from the plaintiff. A conditional sale agreement prepared by the plaintiff was executed by the vendor and vendee and simultaneously an assignment thereof by the vendor to plaintiff, also prepared by the plaintiff, was executed by the vendor. Plaintiff thereupon paid to the vendor the full purchase price. The conditional sale contract was not recorded. Some time later the vendor brought action against Halpern to collect an unrelated debt and attached property included in the conditional sale agreement as the property of Halpern. Plaintiff then sought to replevy the attached property from the defendant, the attaching officer. Since the defendant's rights are derived entirely from the attaching creditor and in effect he

stands in the vendor's shoes, we will hereinafter for an easier understanding refer to the defendant as though he were himself the original vendor and subsequent attaching creditor. The justice below ordered summary judgment for the plaintiff.

The governing statute on July 10, 1961 was R.S.1954, Ch. 119, Sec. 9. Insofar as material to the issues here it provided in part that "it (a conditional sale agreement) shall not be valid except as between the original parties thereto, unless it * * is recorded * * *."

This statute embraces concepts of both validity and notice. Thus even a *recorded* conditional sale agreement will not suffice to protect the owner thereof unless the recording is such as to give effective constructive notice to third parties. Globe Slicing Mach. Co., Inc. v. Casco Bk. & Tr. Co., (1958) 154 Me. 59, 142 A.2d 30. In some jurisdictions such recordation statutes are so worded as to protect the holder of the unrecorded conditional sale contract as against the rights of third parties who have actual knowledge or notice thereof, but such is not the case in Maine. The Legislature may well have deemed it to be in the public interest not to leave the issue of actual knowledge or notice to the uncertainties of proof on a case by case basis, but rather to protect the intervening third parties absolutely as against the unrecorded reservation of title. The Legislature, quite understandably however, made an exception and offered an "original party" no protection against the unrecorded agreement. Since such a party originated and participated in the contract at its inception, his knowledge and notice thereof could be conclusively presumed and there would exist no necessity for affording him the protection vouchsafed to third parties. As will be noted infra in this opinion, the underlying purpose of the statute is to protect the rights *of third parties* by the requirement of recordation. It is against this background of underlying legislative intent that we assess the rights of the parties in the instant case.

The word "between" in the quoted portion of the statute has not been narrowly construed. The case of Beal v. Universal C.I.T. Credit Corp. (1951) 146 Me. 437, 440, 82 A.2d 412, 414, involved a suit by the second assignee against the first assignee of an unrecorded conditional sale agreement in which the plaintiff claimed the contract was misrepresented as a first lien. The court held that the contract was "valid" and gave the second assignee a better lien than that held by the owner of a recorded chattel mortgage given *before* the conditional sale vendee had acquired any title. In reaching this result the court necessarily and in effect concluded that the unrecorded contract initially "valid" as "between" the "original parties" remained "valid" as "between" the vendee and the first assignee of the vendor, and continued "valid" as "between" the second assignee and the vendee. In short, implicit in the holding is an underlying tacit judicial determination that the word "between" as used in the statute as above quoted may under appropriate circumstances be construed to mean "against". The effect of the holding was that the defendant (first assignee) had sold to the plaintiff (second assignee) a "valid" and valuable contract, valid because enforceable *against* the original vendee, no rights of *third parties* having effectively intervened. The concept that the statute is designed and intended to protect third parties only runs like a thread through our decisions bearing on the subject. We note that in Beal the court said in part: "This statute is interpreted as meaning that an unrecorded conditional sales contract is not valid against the lawful claims *of third persons*. As between the original parties it must be definite, in writing, and signed by the person to be bound thereby. *As to third persons* it must be recorded. * * * It follows that if a sales agreement is good between the parties, and no *other* person has a valid claim, * * * it is good against everyone." (Emphasis ours.)

We distinguish Maine Acceptance Corp. v. Sheehan (1930) 129 Me. 485, 149 A. 833. In that case plaintiff assignee of a conditional sale contract sought to replevy an automobile held by defendant, a deputy sheriff, on behalf of an attaching creditor of the vendee. The sale was made on September 12th and the contract was properly recorded on September 15th, but in the brief interval of only three days, the automobile had been attached by the third party creditor. The court held that defendant must prevail since "an unrecorded conditional sale contract is not valid against an attaching creditor." This is precisely the result which the defendant contends for in the instant case and in fact he sees Sheehan as controlling. In our view it would be unconscionable for an "original party" to participate in the creation of a conditional sale contract, accept a valuable consideration for an assignment thereof, and then in the next moment and before a recordation of the instrument could be secured, assume a new role as attaching creditor and thus invalidate the very contract he had just sold. We are satisfied that Sheehan would have been decided otherwise if the attaching creditor had been an "original party" to the conditional sale contract.

On a number of occasions we have referred to the person intended to be protected by the recordation statute as a "third party". So in *Globe* (supra) we said in part 154 Me. at page 61, 142 A.2d at page 31: "The agreement was without question valid between the (conditional sale vendor) and (vendee). They were the *original parties* and there could be no objection to the use of a trade name by the (vendee) in his transactions with the (vendor). The controversy arises when the interest of a *third party* is at stake. * * * It is proper recording, and the recording alone, that breathes validity against a *third party* into the retention of title in the vendor." (Emphasis supplied.) So in the instant case we think the defendant, standing in the shoes of his attaching creditor, must show that creditor to be a "third party" rather than an "original party" if he is successfully to attack the validity of an unrecorded conditional sale agreement.

▮ We conclude, as did the court below, that the defendant, having entered the transaction in the role of "original party", cannot abandon that role at will and thus obtain statutory benefits which are reserved to and intended only for "third parties".

▮ There is another and equally compelling reason for rejecting the contention of the defendant in the instant case. As vendor he created a "valid" contract as between himself and the vendee. He then entered into an equally valid contract of assignment with the plaintiff. He obtained the benefit of the conditional sale contract by selling it for a valuable consideration. Although he would now treat the thing he sold as invalid and worthless, there is no suggestion that he has tendered to the plaintiff the return of the consideration he received. In City of Belfast v. Belfast Water Co. (1916) 115 Me. 234, 239, 98 A. 738, 740, L.R.A.1917B, 908, we said: "It has been repeatedly held, and we think with good reason, that when a party has accepted the benefits of a contract not contra bonos mores, he should not be permitted to question the validity of it, that he is estopped." So here we think that equity and justice require that this defendant be estopped to deny the validity of a contract on which he has been fully paid by the plaintiff assignee.

▮ In conclusion, we cannot subscribe to the defendant's theory that when an "original party" assigns his interest to another, he thereupon ceases to be an "original party" and becomes a "third party" entitled to the full protection of the recordation portion of the statute. We are satisfied that legislative purpose is accomplished only by a determination that once an "original party", always an "original party" whenever the statute is applicable. The knowledge which stems from participation

in the transaction at its inception effectively substitutes for the constructive notice which otherwise flows from recordation. The "original party" is thereby put upon inquiry to ascertain the subsequent status of the lien which he helped to create. We can envisage no situation in which this will work any undue hardship on any "original party".

The entry will be

Appeal denied.