**BATHPORT BUILDING, INC. and David Mahoney**

v.

**Arthur BERRY and Longreach Company.**

Supreme Judicial Court of Maine.

Argued March 5, 1985.

Decided April 5, 1985.

Richardson, Tyler & Troubh, Eve Cimmet (orally), Harrison L. Richardson, Portland, for plaintiffs.

Fales & Fales, P.A., Stephen B. Wade (orally), Lewiston, for defendants.

Before McKUSICK, C.J., NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

This is a dispute over title to two small strips of land on the west bank of the Kennebec River in the City of Bath, to the north and south respectively of a parcel indisputably owned by Defendant Berry and leased to Defendant Longreach Company (Longreach).[1] The disputed parcels

1. A replica of Exhibit 37A, a map depicting the area, is appended to this opinion. The map was

were once entirely under water and were used as slips by boats docking at a wharf that is now the Berry/Longreach land. They were mostly filled in by Berry. Though he and Longreach have possessed and used the parcels almost exclusively since the early 1950's, the plaintiffs contend that they own the parcels by virtue of their deeds.

Berry and Longreach appeal from the judgment of the Superior Court, Sagadahoc County, adopting the report and recommendations of the referee, that grants the disputed parcels to the plaintiffs respectively, Mahoney to the north and Bathport Building, Inc. (Bathport) to the south. Bathport cross-appeals from that part of the judgment recognizing an easement over the southern disputed parcel to exist in Longreach. Longreach further appeals the referee's failure to find that the easement extended farther, over land indisputably owned by Bathport.

This case has been before the Law Court once before, on appeal from an earlier judgment for the plaintiffs. *In Bathport Building, Inc. v. Berry,* 451 A.2d 899 (Me. 1982), we held that the referee had erred in refusing to make further findings at the defendants' request, and remanded for that purpose. The referee made further findings, but recommended the same result. The Superior Court adopted his recommendation. We vacate so much of the judgment as is adverse to Berry and Longreach, and remand for entry of judgment in their favor on the issues of title to the parcels and of the location of the easement.

I.

Until 1928 the pertinent area of the Kennebec River waterfront was owned by the Eastern Steamship Company to the north and the Howard Coal Company to the south. The border was the area marked EFHG on the map, then a slip for the docking of boats. This is the southerly of the two disputed parcels.

Immediately to the north of that slip was the Eastern Steamship Co. wharf, then located within the area marked CDFE. The wharf extended out to navigable water. On the north side of the wharf was another open slip, here marked ABDC, that is the northerly disputed parcel. Both slips were open water at all times, all the way back to the granite seawall of Commercial Street, and the land under them was not exposed even at low tide.

In 1928, the Eastern Steamship Co. conveyed the wharf and buildings on it to a Henry Leeman who, in 1946 conveyed them to Arthur Berry's wife. She, in turn, conveyed them to Berry in 1963. Those deeds describe an 80' × 163' area, found by the referee to be the area CDFE on the map. The parcel north of the northern slip passed from the Eastern Steamship Co. through various owners to Mahoney. Those deeds describe the whole area formerly owned by the Eastern Steamship Co., excepting the 80' × 163' parcel previously sold to Leeman. The parcel to the south of the southern slip passed through several hands to Bathport's corporate predecessor in 1972 and then to Bathport in 1975. The deed to Bathport describes its northern boundary only as "property now or formerly of one Berry." The older deeds similarly refer only to the "land of" Berry's various predecessors.

Between 1946 and 1955, believing he owned the slip areas, Berry filled the entire area marked ABDFHGECA. He did the bulk of the filling himself. The remainder, including some by the City, was done under Berry's direction. The entire area is now paved to the same level. Berry made use of the filled slip areas in his oil and marine business until 1971, when he leased the entire property to Longreach which has continued to use it as a marina.

In 1972, the incorporators of Bathport's corporate predecessor agreed to give Longreach easements to moor boats along what is now Bathport's waterfront, and to use a portion of the Bathport parking area

made a part of the judgment by the Referee and     the Superior Court.

for parking and access to the water. The testimony was that Royce Howes, owner of Longreach, joined the incorporators in buying the lot south of the Berry/Longreach property. To comply with zoning requirements, title to the lot was taken in Bathport's name. In exchange for his share of the purchase price, $11,000, Howes was to receive the two easements. The evidence includes a writing conveying only the mooring easement. That was recorded several years later. The testimony was that the written agreement omitted the parking easement and was returned to the lawyer's office for correction, which was never done. This came from both Howes and a Mr. Gibbs, one of the incorporators, who is no longer associated with Bathport. Howes never bothered to check the writing since Longreach's use of the area for access and parking was unchallenged until 1978 or so when this dispute arose. Nevertheless, Howes paid Bathport the $11,000 in installments, and the referee found that Bathport could not now deny the existence of a parking easement. The location of the easement is also disputed, as will appear later in the opinion.

## II.

The referee determined that the 80′ × 163′ parcel conveyed to Berry was the area marked CDFE on the map, including the former wharf but not the slips. That parcel is definitively described by distances, but the plaintiffs' deeds describe Mahoney's southern boundary and Bathport's northern boundary respectively only by reference to Berry's land. Accordingly, the referee determined that the plaintiffs' deeded borders are contiguous with the north and south lines of the wharf parcel. Thus, he found, the plaintiffs were the record owners of the filled slip areas. Under that analysis the burden of proof then shifted to Berry and Longreach to prove better title. The referee decided, for reasons not relevant to this opinion, that they had failed to establish title by adverse possession, and gave judgment for the plaintiffs.

▮ The referee correctly placed the initial burden of proof of title on the plaintiffs. *Sargent v. Coolidge*, 399 A.2d 1333, 1342 (Me.1979). He erred, however, in concluding that they had satisfied it. The rule of common and statutory law since the Colonial Ordinance of 1641 has been that "the owner of land upon the sea shore owns to low water mark.... But beyond low water mark the owner of the upland and flats has no more ownership or control than any other member of the public." *Sawyer v. Beal*, 97 Me. 356, 357–58, 54 A. 848 (1903); *Gerrish v. Proprietors of Union Wharf*, 26 Me. 384 (1847). In this case the plaintiffs' deeds could not have given them title to the slip areas because, until Berry filled them and went into possession, both slips were at all times entirely open water.

The referee's original report found that the parcel on which the Steamship Co. wharf was built was exposed by low tide, but made no finding about the slips. His supplemental report erroneously assumed that the original report had made such a finding. He then adopted the defendants' proposed finding of fact that, "[i]n 1946 and at all time before, the land on either side of Mr. Berry's deeded property, which were the slip areas, was land below the tidal waters of the Kennebec River, and even at very low tides these lands were not exposed and in fact was relatively deep." We have independently reviewed the entire record and find nothing but evidence that the slip areas were entirely submerged. The burden was initially on the plaintiffs, Bathport and Mahoney, to establish that their claimed boundaries had included unsubmerged land within the slip areas. This they did not do. "Showing no title in themselves, the plaintiffs cannot prevail even if it turned out that the defendants had no title." *Smith v. Varney*, 309 A.2d 229, 233 (Me.1973).

## III.

▮ The referee found that Bathport and its corporate predecessor had accepted

$11,000 in monthly installments from Howes for the parking easement. Thus, he concluded, "its existence cannot now be denied by Bathport." Though Bathport argues that no easement was validly created, we affirm the judgment on this point. "It has been repeatedly held, and we think with good reason, that when a party has accepted the benefits of a contract not contra bonos mores, he should not be permitted to question the validity of it, that he is estopped." *Industrial Credit Co. v. Cushing,* 222 A.2d 46, 48 (Me.1966); *City of Belfast v. Belfast Water Co.,* 115 Me. 234, 239, 98 A. 738, 740 (1916).

The referee erred, however, in locating the easement over the southern slip area. Berry has title to that parcel, a fact that he and Howes always assumed. The undisputed testimony from both sides was that Longreach actually uses, in conjunction with Bathport, the northern strip of Bathport's land located within the area marked GHJI on the map. Longreach also does what little maintenance is necessary in that area. Because Berry owns the southern slip area, it follows that Longreach's parking easement must lie within the area GHJI.

The entry is:

Judgment affirmed in part and reversed in part. Remanded to the Superior Court for entry of judgment consistent with the opinion herein.

All concurring.

APPENDIX

Mahoney

A

B

D

C

Berry/Longreach

COMMERCIAL STREET

KENNEBEC RIVER

F

E

H

J

G

I

N

Bathport