## CHARLES C. BURRILL *vs.* HOWARD F. WHITCOMB.

### Hancock.    Opinion June 27, 1905.

*Chattel Mortgage.    After-acquired Property.    Possession taken by Mortgagee.*
*Attaching Creditor.    "New Act."    R. S., c. 93, § 1.*

1.  A mortgage of chattels including all stock in trade, furniture and fixtures that may thereafter be acquired, contained the further provision that the mortgagee should have the right to take possession of the mortgaged property and of any additions that might be made thereto, whenever he should deem it for his interest to do so.

2.  The plaintiff as mortgagee, took possession of the mortgaged property including the after-acquired stock in question for the purpose of enforcing his rights under the mortgage, and sought to retain possession of it as against an attaching creditor, who attached after possession had been taken by the mortgagee.  The attached property had not been purchased with the proceeds of any of the mortgaged stock previously sold by the mortgagors.

3.  There was no act of delivery of such after-acquired stock on the part of the mortgagor at any time after it was purchased by him, and possession of it was taken by the mortgagee without any other consent of the mortgagor than that contained in the agreement found in the mortgage.

4.  *Held:*  That such mortgage is valid as to the after-acquired property and that the mortgagee had a lawful right to take possession of the same under the mortgage and that his claim to the after-acquired property is superior to that of the attaching creditor.

On exceptions by plaintiff.    Sustained.

Trover against the defendant as sheriff to recover the value of a quantity of tea attached by him on a writ in favor of M. M. Gallert and against Melvin M. Davis and Effie E. Davis, copartners under the name and style of M. M. & E. E. Davis.

The case is fully stated in the opinion.

*F. C. Burrill and L. B. Deasy,* for plaintiff.

*A. W. King,* for defendant.

SITTING: WHITEHOUSE, STROUT, SAVAGE, PEABODY, SPEAR, JJ.

WHITEHOUSE, J.   This is an action of trover brought against the defendant as sheriff of Hancock County, to recover the value of a quantity of tea attached by him on a writ in favor of M. Gallert and against M. M. and E. E. Davis.

The plaintiff claims title to the attached property by virtue of a mortgage from the Davises to him, duly recorded, in which the property is described as follows:

"All the stock in trade consisting principally of teas, coffees, spices, crockery and small wares, store furnishings and fixtures, present and future book accounts, now contained in the store situated on the north side of Main St., in Ellsworth, Maine, occupied by us and where we now carry on business and also all stock in trade, furniture and fixtures that may be hereafter acquired."

The mortgage also contains the following provisions and agreements: "Provided, however, that it shall and may be lawful for the said grantors, said M. M. & E. E. Davis, to continue in possession of the property herein mortgaged until such time as said Burrill . . . . shall consider it for his or their interest to take possession under this mortgage for the enforcement of any and all rights given to said Burrill under this mortgage, the said grantee, said Burrill, by the acceptance of this conveyance, hereby expressly constituting the said grantors, said M. M. & E. E. Davis, his trustees, to continue in possession of the property herein mortgaged until such time as said grantee shall deem it for his interest to take possession of the same for any of the purposes in this mortgage specified, or for the purpose of enforcing his legal or equitable rights hereunder.

And the said grantors, said M. M. and E. E. Davis, further hereby agree and declare that all stock in trade, general merchandise, book accounts, and debts due, of every name and description which they may from time to time hereafter during the continuance of this mortgage add or supplement, or incorporate with stock in trade, general merchandise, book accounts and debts due, and personal property herein mortgaged, for the purpose of carrying on the said business

shall be subject to and included in this mortgage, and the provisions herein contained be applicable to them also.

And the said grantors hereby further agree that if at any time during the continuance of this mortgage, the said Charles C. Burrill, his executors, administrators or assigns, shall deem it for their interest to take possession of the property herein mortgaged or of any additions thereto that may be made, the said Burrill, his executors, administrators or assigns shall thereupon have the right to take such possession, peaceably and quietly, and that thereupon and so soon as said Burrill, his executors, administrators and assigns take such possession, the whole debt secured by this mortgage shall be due and payable whether the time for its payment has elapsed or not, anything in this mortgage to the contrary notwithstanding, and the said Burrill, his executors, administrators or assigns, shall thereupon have the right to foreclose this mortgage by any of the methods provided by the law of the State of Maine for the foreclosure of mortgage of personal property. . . . Said Burrill may also have the right to move the goods to any place that he may deem for his best interest."

At the time of the execution and delivery of the mortgage, the tea, for the conversion of which this suit is brought, had not been bought by the mortgagors, and was not in their possession. Between the date of the mortgage and February 19th, 1904, the tea was bought by the mortgagors and placed in their store as a part of their stock for the purpose of carrying on their business. It was not paid for by the proceeds of any of the mortgaged stock.

On February 19, 1904, the plaintiff, deeming it for his interest so to do, took possession of all the stock in the store, including the tea, for the purpose of enforcing his rights under the mortgage, and removed the same to another store and retained possession of it until February 20th, 1904, when the tea was attached and taken away by the defendant, as sheriff of Hancock County as above stated.

There was no act of delivery of the tea in question on the part of the mortgagors at any time after it was purchased by them, and the taking possession of the tea by the plaintiff with the rest of the stock

was without any other consent of the mortgagors than that contained in the agreement found in the mortgage.

By agreement of the parties the case was heard by the presiding judge, without the aid of a jury with leave to except in matters of law. The court found as matters of fact that the mortgage had been foreclosed and the foreclosure completed more than forty-eight hours before the bringing of this action and also that the written notice provided by R. S., chap. 83, sec. 45, had been seasonably given by the plaintiff to the defendant.

But the presiding judge also ruled as a matter of law that the mortgage of future acquired chattels was void against attaching creditors without some new act on the part of the mortgagor and that possession taken without the consent of the mortgagor and retained by the mortgagee before and until the attachment was not sufficient to make the mortgage good. Judgment was accordingly rendered for the defendant, and the case comes to this court on exceptions to this ruling.

The case thus stated presents for the determination of the court the single question of law whether a mortgagee in a chattel mortgage duly recorded, who has taken and retained possession of after-acquired stock in trade as a part of the property described in the mortgage, by virtue of an explicit agreement in the mortgage authorizing him so to do, is entitled to hold such after-acquired property not purchased with the proceeds of any of the stock sold, as against a creditor who attaches it after possession taken by the mortagee.

The defendant contends that inasmuch as the tea in question was not owned or possessed by the mortgagors at the date of the mortgage, the mortgage itself was not operative to transfer the title to the plaintiff; and as there was no subsequent act of delivery on their part and no voluntary transfer of it to the plaintiffs or consent that the plaintiff should take possession of it, given after they acquired title to it, the possession taken and retained by the plaintiff by virtue of the consent in the mortgage was not sufficient to entitle him to hold it even against a creditor who did not attach it until after possession taken by the mortgagee.

The plaintiff does not controvert the well settled general rule

that a mortgagee of after-acquired chattels, obtains no title or right to them as against a creditor of the mortagor, who attaches them in the hands of a mortgagor before the mortgagee has taken possession. The exceptions to this rule respecting chattels of which the mortgagor had potential ownership at the time the mortgage was given, and chattels purchased with the proceeds of those sold and substituted for them in accordance with the term of the mortgage, as already seen, are not involved in the present case. It is not questioned that the defendant's attachment would have been good if it had been made while the tea was in possession of the mortgagor. But the plaintiff contends that in case of mortgages like the one at bar, the executory agreement of the mortgagor is a continuing agreement, and that the taking of possession by the mortgagee of after-acquired property by virtue of the previous consent of the mortgagor given in the mortgage, is equivalent to a delivery of possession by the mortgagor, and that the mortgagee's equitable lien is thereby made good without any new act or consent on the part of the mortgagor.

The respective rights of mortgagee and attaching creditors or other third parties in regard to after-acquired property claimed under chattel mortgages upon facts analogous to those at bar, have frequently received the attention of this court, and obiter dicta may be found and some early authorities are cited in several Maine cases, tending to support the defendant's position; and on the other hand, recent decisions from other states have been cited with approval tending to support the plaintiff's contention; but the precise question now presented does not appear to have been necessarily involved and directly determined in any reported case in this state. It has often been decided, however, in other jurisdictions by courts of great respectability and high authority, and this court is now at liberty to adopt the view which is most in accord with the principles of equity and sound reason and at the same time best supported by the weight of judicial opinion in other American states.

It is a well settled principle in equity requiring no citation of authorities in its support that "an agreement to give security upon property not yet in existence or in the ownership of the party making the contract, or property to be acquired by him in the future,

although, with the exception of chattels, having "potential existence it creates no legal estate in the things when they afterwards come into existence or are acquired by the promisor, does constitute an equitable lien upon the property so existing or acquired at a subsequent time, which is enforced in the same manner and against the same parties as a lien upon specific things existing and owned by the contracting party at the date of the contract." 3 Pom. Eq. sec. 1236. So in *Mitchell* v. *Winslow*, 2 Story, 630, it is said by Judge Story, "that whenever parties, by their contract, intend to create a positive lien or charge either upon real or personal property, whether then owned by the assignor or contractor or not, or if personal property, whether it is then in esse or not, it attaches in equity as a lien or charge upon the particular property as soon as the assignor or contractor acquires a title thereto, against the latter and all persons asserting a claim thereto under him, either voluntarily or with notice or in bankruptcy."

In *Griffith* v. *Douglas*, 73 Maine, 532, relied upon by the defendant as an authority to support his contention, this doctrine of equitable lien is recognized by our court. In the opinion the court say: "While at common law the mortgage covers the existent property of the mortgagor and does not transfer any right to after-acquired property, it is otherwise in equity. Though that court recognizes the rule of the common law, yet it holds such conveyance operative as an executory agreement binding on the property when acquired. The mortgagor holds the property as trustee and equity enforces the trust. In some cases the decision rests upon the grounds of an equitable lien;" and *Mitchell* v. *Winslow*, 2 Story, 630, is cited in support of this principle.

In *Griffith* v. *Douglas*, supra, the mortgaged property consisted of hotel furniture and the mortgage contained a provision that it should be lawful for the mortgagors to continue in the possession of the property "without denial or interruption" by the mortgagee until condition broken. There was a formal delivery of the subsequently purchased goods to the mortgagee but possession of them was not retained by him. The mortgagee's possession was only instantaneous. It was immediately resumed by the mortgagor. This was the decisive fact in that case. The court say, "the authorities are uniform

in requiring not merely delivery but retention of the property delivered as indispensable to the perfection of the mortgagee's title."

The question now before the court was not raised by the facts disclosed in that case, and consequently it was not there adjudicated. The elaborate discussion, in the opinion, of the rights of mortagees in chattel mortgages covering after-acquired property, must be understood to apply only to the facts of that case. The early cases of *Head* v. *Goodwin*, 37 Maine, 181, and *Jones* v. *Richardson*, 10 Met. 481, cited by the defendant, are there adopted by the court as leading authorities upon the question discussed in the opinion. In *Jones* v. *Richardson*, it is true, evidence that the mortgagee had taken possession of after-acquired property for the purpose of foreclosure was said to be immaterial and some new act on the part of the mortgagor was held to be necessary, thus apparently supporting the defendant's contention. But in that case the mortgage contained no express agreement that the mortgagee should take possession. Furthermore the doctrine in that case has been repudiated in four subsequent cases in that state, and thus the authority upon which the decision in *Head* v. *Goodwin*, supra, is founded, is seen to have been denied by the court from which it emanated. Besides, the facts in *Head* v. *Goodwin* differ toto coelo from those in the case at bar and the decision is in no respect an authority for the defendant. There a vendor sold one-half of a chaise to which he had no title, and afterwards purchased the chaise and delivered it at a certain stable into the custody of the person to whom he had sold one-half of it; but the court found no satisfactory evidence that this delivery was made for the purpose of effectuating the former sale, and held that it was not such a new act as to transfer the property.

In *Sawyer* v. *Long*, 86 Maine, 542, possession of the stock was not taken by the mortgagee, but was retained by the mortgagor, and the property passed to the assignee who transferred it to the defendant as purchaser of the assignee's interest. In *Dexter* v. *Curtis*, 91 Maine, 505, it was held that while the mortgagor, by the terms of the mortgage had the right to sell or exchange any portion of his stock, he did not have the right to sell those goods to his creditors in

payment of past indebtedness. The question now before the court was not involved in either of these cases.

On the other hand, in *Deering* v. *Cobb,* 74 Maine, 332, the facts more clearly resemble those in the case at bar, except that the rights of an attaching creditor were not involved. In the opinion the court say:

"It seems, also, that when as in this case, a mortgage is effective between the parties as a transfer of title to property to be subsequently acquired by the use of the proceeds of the original stock and the mortgage contains a power to the mortgagee to enter and take possession of such future property when acquired, possession taken and retained in the exercise of that power makes the mortgage effective, without any new act of the mortgagor, against third persons claiming under him by later attachment or conveyance."

"A proposition at least as strong as this is sustained in Jones' Chat. Mort. § § 160, 167, by a full citation of authorities, English and American, which there is no occasion here to examine more minutely. *Hope* v. *Hayley,* 5 El. and Bl. 830; *Moody* v. *Wright,* 13 Met. 17, 32; *Cook* v. *Corthell,* 11 R. I. 483; *Walker* v. *Vaughn,* 33 Conn. 577, 583.

"But in a more recent case in Massachusetts, which has been one of the states to hold most closely to common law doctrines in regard to mortgages of this kind, it has been held that "if the after-acquired property is taken by the mortgagee into his possession before the intervention of any rights of third persons, he holds it under a valid lien by the operation of the provision of the mortgage in regard to it. . . . Such taking of possession, though effected immediately before insolvency proceedings were instituted, and with full knowledge of the insolvency of the mortgagor, would not be the acceptance of a preference, but the assertion of a right which had been previously acquired by the mortgagee under an instrument in writing made when the parties to it were both competent to contract, and when there was no qualification of the right of either to deal with the other." *Chase* v. *Denny,* 130 Mass. 566.

In this case our court plainly recognizes the progressive development of the law upon this subject, although the precise question

under discussion was not then presented for decision. It shows a strong tendency to reject the narrow interpretation of the common law rule found in some of the earlier decisions, and a readiness to adopt the more reasonable and equitable doctrine which simply requires the mortgagor to observe the obligation of his express agreement in the mortgage. The common law dogma which is said to require some new act on the part of the mortgagor to protect the mortgagee's lien, appears to have been founded mainly upon one of Lord Bacon's Latin maxims which declares that "though the grant of a future interest is invalid, yet a declaration may be made which will take effect on the intervention of some new act;"—"interveniente novo actu." As one of the first instances stated by Lord Bacon to illustrate the maxim had reference to a "new act" on the part of a grantor, it appears to have been assumed by some of the courts that no other act would suffice to effectuate the prior agreement. But such a restricted meaning was not required by the text of the maxim, and it was explicitly repudiated in *Congreve* v. *Evetts*, 10 Exch. 298. In the bill of sale in that case it was agreed that the plaintiff might take possession of the crops and other effects which might from time to time be substituted in lieu of the crops, or which should be found on the farm. The plaintiff seized and took possession of some of the crops which had been *sown after* the indenture was made. In delivery the judgment of the court Parke B. said; "If the authority given by the bill of sale had not been executed, it would have been of no avail against the execution; . . . . but when executed to the extent of taking possession of the growing crops, it is the same in our judgment, as if the debtor himself had put the plaintiff in actual possession of those crops." See also *Carr* v. *Allatt*, 3 Hurl. & Norm. 964.

But it is suggested that by sect. 1, of chap. 93, R. S., "No mortgage of personal property is valid against any other person than the parties thereto unless, possession of such property is delivered to and retained by the mortgagee, or the mortgage is recorded, etc." In this case, it has been seen the mortgage was duly recorded, and possession of the goods therein described, including the after-acquired property, was rightfully taken and retained by the mortgagee by virtue of the consent of the mortgagor previously granted on the

stipulation of the mortgage. It is universally conceded, as before stated, that possession taken by the mortgagee, by virtue of the mortgagor's consent given after the property is acquired, is to be deemed equivalent to a voluntary delivery by the mortgagor, and such a "new act" as will effectuate the previous agreement. It has now been shown by a uniform current of modern decisions that the law has advanced another step, and now holds that actual possession of such property taken by the mortgagee in the exercise of an authority expressly granted in the mortgage, is also equivalent to a voluntary delivery by the mortgagor, and if such possession is retained, it makes good the mortgagee's lien as against an attaching creditor. Statutory provisions for the registration of chattel mortgages in effect precisely like our own, existed in all the states from which the foregoing decisions have been cited, but in no case directly involving the question now before the court, have they been held to be in conflict, with the equitable doctrine above stated.

It is uniformly conceded that if the mortgagee takes possession of after-acquired property, in accordance with an express agreement in the mortgage, with the consent of the mortgagor given after he acquired title, it will be sufficient to perfect the mortgagee's lien. But a stipulation in the mortgage authorizing the mortgagee to take possession at any time, is not a mere license revocable at the pleasure of the mortgagor, but a valid and binding contract which continues in force until performed. It is therefore difficult to understand upon what principle of justice or conception of common right, a mortgagor can be permitted to defeat the acknowledged equitable rights of the mortgagee by simply withholding his consent in violation of his express stipulation in the mortgage. According to this doctrine, if the mortgagee seeks to exercise his right to take possession of the property under the mortgage, and the mortgagor gives an express assent, not required by the terms of the mortgage, the mortgagee's equitable rights are preserved. On the other hand, if the mortgagor objects, in violation of his agreement or stands mute, the mortgagee's possession, though expressly authorized by the contract of the parties, will not suffice and his rights are lost. Such a rule cannot be founded on principles of right and justice.

And it will now be seen that such a rule has no stronger support in authority than it has in reason and equity.

In *Wright* v. *Moody*, 13 Met. 17, the reasons for the contrary rule are thus stated: "A stipulation that future acquired property shall be holden as security for some present engagement is an executory agreement, of such a character, that the creditor with whom it is made may, under it, take the property into his possession, when it comes into existence, and is the subject of transfer by his debtor, and hold it for his security; and whenever he does so take it into his possession, before any attachment has been made of the same, or any alienation thereof, such creditor, under his executory agreement, may hold the same; but, until such an act done by him, he has no title to the same; and that, such act being done and the possession thus acquired, the executory agreement of the debtor authorizing it, it will then become holden by virtue of a valid lien or pledge. The executory agreement of the owner, in such case, is a continuing agreement, so that when the creditor does take possession under it, he acts lawfully under the agreement of one then having the disposing power, and this makes the lien good."

Although the reasoning was not essential to the conclusion in that case, it has been accepted by that court as the law of that state and applied in all subsequent cases. A copious extract from the opinion in *Chase* v. *Denney*, 130 Mass. 568, was made by this court in *Deering* v. *Cobb*, 74 Maine, supra.

In *Blanchard* v. *Cooke*, 144 Mass. 207, the court say: "The only apparent change in our decisions is, that by the recent cases possession of after-acquired chattels rightfully taken by a mortgagee under the power contained in the mortgage, if the possession is retained, vests the title in the mortgagee as against third persons, and a delivery by the mortgagor is no longer held to be essential." . . . . "Our recent decisions have therefore proceeded upon the theory, which by a dictum in *Jones* v. *Richardson*, was denied, that when the chattels are acquired, and are identified by the terms of the mortgage, the title passes as between the parties, and a possession rightfully obtained by the mortgagee, and retained by him, vests the title in him as against third persons whose rights have not attached

before the possession is taken, and that delivery by the mortgagor is not necessary.

In *Bennett* v. *Bailey*, 150 Mass. 259, it was ruled at the trial that the taking of possession of such after-acquired property by the defendant without any delivery to him by the plaintiff, was insufficient, but exceptions to this ruling were sustained. In the opinion the court say: "It was settled in *Blanchard* v. *Cooke*, 144 Mass. 207, after a careful review and a full consideration of the authorities, that possession of after-acquired personal property, rightfully taken and maintained by a mortgagee, under a mortgage purporting to cover it, gives him a title good not only against the mortgagor, but even against an assignee in insolvency or an attaching creditor. That principle is applicable to the present case."

In *Rowan* v. *Man'f. Co.*, 29 Conn. 283, where a mortgage of a factory and its equipments embraced in its terms such machinery and stock as should be afterwards purchased and placed upon the premises, and the mortgagee had afterwards taken possession of the factory with such after-acquired property, it was held that whatever effect was to be given to the provision in itself, it became operative upon possession being taken by the mortgagee. This was re-affirmed in *Walker* v. *Vaughn*, 33 Conn. 577.

See also *Williams* v. *Briggs*, 11 R. I. 476; *McLoud* v. *Wakefield*, 70 Vt. 560; *McCaffrey* v. *Woodin*, 65 N. Y. 459; *Lamson* v. *Moffatt*, 61 Wis. 153, and *Fisher* v. *Syfers*, 109 Ind. 514.

It may be deemed worthy of observation that the rights of attaching creditors were not directly involved in any of the cases hereinbefore cited from other states; but if any authority is required to establish the proposition, that an attaching creditor cannot acquire any rights either statutory or equitable, superior to those of a mortgagee who has taken and retained possession of the property by virtue of an express contract in the mortgage authorizing him so to do, it will be furnished by the following well reasoned decisions from courts of eminent respectability.

In *Francisco* v. *Ryan*, 54 Ohio St. 307, the mortgage contained a stipulation like that in the case at bar authorizing the mortgagee to take possession of the property and the court thus discussed the

question in the opinion: "The contention of the plaintiffs in error on this point is, that it is essential to the acquisition of a valid lien on the after-acquired property under such a mortgage that the mortgagor voluntarily deliver the property to the mortgagee, or give his consent to the mortgagee's possession when taken; and that the lien does not arise if, as in this case, the mortgagee of his own accord take the possession. . . . . Acting under this contractual authority in obtaining possession of the property, the consent of the mortgagor thereto at the time can neither be necessary to the legality of the possession, nor can it in any way add to the rights of the mortgagee. Certainly, after possession so taken, the mortgagor could not successfully assert any claim to the property, for his contract would prevent him; and, as whatever title he theretofore had to the property is thereby extinguished, nothing remains to be reached by his attaching or other creditors, unless it be such surplus as should remain after satisfying the mortagee's debt."

In *Barton* v. *Sitlington*, 128 Mo. 164, a chattel mortgage contained an agreement that it should cover all merchandise that might subsequently be added to the mortgagor's stock and it was held that the mortgagee acquired a valid lien by taking possession under the mortgage before the rights of other creditors intervened. In the opinion, the court say: "By the express terms of the mortgages it was provided, that if the mortgagees should consider themselves unsecure, they might take possession of any part or all of said merchandise and the taking possession under an order of delivery, issued in the action of replevin instituted by the plaintiffs to obtain possession under the mortgages, was but a taking by and with an agreement entered into by the mortgagor, and was all that was necessary. . . . . The taking possession of such property by the mortgagees under the authority given in the mortgages before the rights of other creditors had intervened, created a valid lien on such property. Jones on Chattel Mortgages, secs. 164-168; *Keating* v. *Hanenkamp*, 100 Mo. 161; *Moody* v. *Wright*, 13 Met. 17."

So also in *Tennis* v. *Midkiff*, 55 Ill. App. 642, and *Quiriaque* v. *Dennis*, 24 Cal. 154, it was held "that where a mortgage provides that it shall cover after-acquired property, and the mortgagee takes

possession of such property, his claim is prior to that of a subsequent attaching creditor."

In 6 Cyc. of Law & Proc. 1051, the result of all the authorities is stated as a settled and unquestioned rule that with respect to after-acquired property, "an actual transfer of possession to the mortgagee, either by voluntary delivery from the mortgagor, or by the exercise of a power to take possession contained in the mortgage, is such a new act as will constitute a ratification of the mortgage." To the same effect is the rule formulated in 5 A. & E. Encyc. of Law, 980.

Nor is it apparent that such a contract respecting after-acquired property is in contravention of any established rules of public policy. Indeed it would seem to be more in obedience to the principles of sound morality and consideration of public duty to sanction the act of the mortgagee in taking and holding the property in accordance with the express terms of the contract, rather than the act of the mortgagor or an attaching creditor in taking it away from him in violation of the agreement.

It is accordingly the opinion of the court that the action is maintainable and that the entry must be

*Exceptions sustained.*