[No. 1481, January 14, 1913.]

SMITH & RICKER, a Firm Composed of C. M. Smith and George E. Ricker, Appellees, v. HILL BROS., a Copartnership Consisting of George W. Hill, L. E. Hill and F. G. Hill, Blas Duran and the El Paso Bank & Trust Co., a Corporation, Appellants.

SYLLABUS (BY THE COURT).

1. A purchase money mortgage of chattels creates a superior lien to a prior general mortgage of the same property.

2. Privies in estate are bound by estoppel by misrepresentation only when they take the property either without value or with notice of the estoppel.

3. Quere, Whether a chattel mortgage purporting to operate in presenti by a person without title is within the terms of the recording statute, section 2361, C. L. 1897.

4. An investigator may rely upon the truth of recitals contained in a record where they are specific.

5. The negligence of the holder of an equity arising out of estoppel by misrepresentation may disturb what would otherwise be the order of priority and postpone his equity to that of a junior holder of an equity in the same property.

6. The acquisition of an equity in property under such circumstances that the true owner is estopped to assert title, gives superiority to such equity over a prior equity in the same property in favor of a person not entitled to assert such estoppel.

Appeal from the District Court, Torrance County.

MARRON & WOOD, for appellants.

Hill Bros. had neither possession nor title to the sheep when they executed the mortgage to plaintiff. The Elgee Cotton Cases, 22 Wall. 180; 24 A. & E. E. of L. 1045-7.

Plaintiff's mortgage does not cover, nor purport to cover, the sheep as after acquired property. Jones on Chattel Mortgages, sec. 173-A; Cobbey on Chattel Mortgages; Montgomery v. Chase, 14 N. W. 586; Phillips v. Both, 12 N. W. 481; Pennock v. Coe, 64 U. S. 117; New England Natl. Bank v. Northwestern Natl. Bank, 60 L. R. A. 256; Iowa State Bank v. Taylor, 98 Ia. 631; Tapfield v. Hillman, 6 Mann & G. 245; Farmers Loan & T. Co. v. Commercial Bank, 15 Wis. 435.

As mortgages of after acquired property are good only in equity, it follows that they are subordinate to all superior equities. Farmers Loan & T. Co. v. D. L. & G. R. R. Co., 126 Fed. 46; Beall v. White, 94 U. S. 382; Pennock v. Coe, 23 How. 117; Story Eq. Jur. 9th ed. sec. 1040; Dunham v. R. Co., 1 Wall. 254; U. S. v. R. R. Co., 12 Wall. 362; New Orleans & Ohio R. R. Co. v. Mellen, 79 U. S. 362.

Where it was the intention of the parties that a sale of merchandise should be a cash transaction or secured in a particular way, title does not pass to the vendee until the performance of the conditions; and where such was the agreement it is immaterial that possession has been delivered to the vendee. Hammett v. Linneman, 48 N. Y. 399; Dows v. Kidder, 84 N. Y. 128; Empire State Co. v. Grant, 114 N. Y. 40; Stone v. Perry, 60 Me. 51; Fishback v. Van Dusen, 33 Minn. 117; Williamson v. N. J. S. Ry., 28 N. J. Eq. 289; Nelson Distilling Co. v. Green Tree Brewery Co., 32 Mo. Ap. 276; Adams v. O'Connor, 100 Mass. 515; Harkness v. Russell, 118 U. S. 675; Coman v. Lakey, 80 N. Y. 345; Tilford v. Atl. Match Co., 134 Fed. 924; Fosdick v. Schall, 99 U. S. 235; Hervey v. Locomotive Works, 93 U. S. 664; Herschon v. Canney, 98 Mass. 149; Readwell v. Gillen, 4 N. M. 72.

The testimony fails to establish any waiver of Duran's rights. Benicke v. Conn. Mut. Co., 105 U. S. 359; Smith v. Deming, 2 Pick. 262; Warren v. Crane, 50 Mich. 301; Hammett v. Lineman, 48 N. Y. 399; Ripley v. Aetna Ins.

Co., 30 N. Y. 164; Lawrence Co. v. Stewart Bros., 81 S. W. 1059; N. Y. L. Ins. Co. v. Watson, 23 Mich. 486; McFarland v. Peabody Ins. Co., 6 W. Va. 430; Adams v. Roscoe Lumber Co., 2 App. Div. 47; Schulkill v. Copley, 67 Penn. St. 386; Page v. Krekey, 137 N. Y. 307; U. P. Co. v. Harris, 158 U. S. 326.

The defendant El Paso Bank & Trust Co. has all the rights of Duran as against the plaintiffs. Mitchell v. Winslow, 2 Story. 630; N. E. Natl. Bank v. N. W. Bank, 60 L. R. A. 256; Cobbey on Ch. Mtg. sec. 781; Wade on Notice, sec. 214; Ford v. Church Soc., 23 L. R. A. 561; 6 Cyc. 1043, 1044.

The rights of a purchaser of warehouse receipts in good faith from one in possession, under our warehouse act. Sec. 48, chap. 38, laws of 1909.

E. W. DOBSON, GILMORE & BROWN, for Appellees.

Hill Bros. in executing the chattel mortgage to plaintiffs intended to create a positive lien or charge upon said sheep and wool, and that whether said property was then in esse or not, it attached in equity as a lien as soon as the mortgagors acquired a title thereto. Mitchell v. Winslow, 2 Story 630; Railroad Co. v. Cowdry, 11 Wall. 459; Ludlum v. Rothschild, 41 Minn. 218; 20 N. W. Rep. 85; Minn. Linseed Oil Co. v. Maginnis, 32 Minn. 193; Miller v. McCormick Harvesting M. Co., 35 Minn. 399; 29 N. W. 52; Holyroyd v. Marshall, 10 H. L. C. 191; Edwards v. Peterson, 80 Me. 367.

This rule has been followed in Pennoch v. Coe, 23 How. 117; Seymour v. C. & N. F. R. R. Co., 25 Barb. 288; Sillers v. Lester, 48 Miss. 254; Butt v. Ellet, 19 Wall. 544; Apperson v. Moore, 30 Ark. 56; McCaffrey v. Woodin, 65 N. Y. 459; Barnard v. N. & W. R. R. Co., 4 Calif. 351; Brett v. Carter, 2 Low. 458; Gregg v. Sanford, 24 Ill. 719; S. C. 76 A. D. 719, with an elaborate note citing many authorities, page 723; Walker v. Vaughn, 33 Conn. 577; Wilcox v. Daniels, 15 R. I. 261; Hamlin v. Jerrard, 73 Me. 77; Morrill v. Noyes, 56 Me. 458; Griffith v. Douglas, 73 Me. 532; Scharfenburg v. Bishop, 34 Ia. 66; Brett

v. Carter, 2 Low. 458; Moody v. Wright, 13 Met. 17; Mogg v. Baker, 3 M. & W. 195; Curtis v. Auber, 1 Jac. & W. 532; Re Ship Warre, 8 Price. 269; Langton v. Horton, 1 Hare 549; Douglas v. Russell, 4 Sim. 524; Pennoch v. Coe, 23 How. 117; Morrill v. Noyes, 56 Me. 458; Pierce v. Emery, 32 N. H. 484; Benjamin v. Elmira R. R., 49 Barb. 441; Phila. etc. Co. v. Woelpper, 64 Pa. St. 366; Phillips v. Winslow, 18 B. Mon. 431; Sillers v. Lester, 48 Mass. 513; Pierce v. Mil. R. R. Co., 24 Wis. 551; Butt v. Ellett, 19 Wall. 544; Page v. Gardner, 20 Mo. 507; Wright v. Burcher, 72 Mo. 179; Parker v. Jacobs, 14 S. C. 112; Hughes v. Wheeler, 66 Ia. 641; Greeg v. Sanford, 24 Ill. 17.

After acquired property. Allen v. McCalla, 25 Ia. 464; Barron v. San Angelo Natl. Bank, 138 S. W. 142; Thornton v. Findley, 134 S. W. 627; Trust Co. v. Kneeland, 138 U. S. 419; Bear Lake Co. v. Garland, 164 U. S. 515; Morton v. Williamson, 72 Ark. 390; Thurston v. Elevator Co., 13 N. D. 508; Stall v. Stibson, 65 N. J. Eq. 552.

Other cases to the same point are R. R. Co. v. Cowdry, 11 Wall. 459; Ludlum v. Rothschild, 41 Minn. 218; Edwards v. Peterson, 81 Me. 367; Scharfenburg v. Bishop, 35 Ia. 66; Brett v. Carter, 2 Low. 458; Butt v. Ellet, 19 Wal. 544; Page v. Gardner, 20 Mo. 507; Rutherford v. Stewart, 79 Mo. 216; Seymour v. R. R. Co., 25 Barb. 284; Parker v. Jacobs, 14 S. C. 112; Smithhurst v. Edmunds, 14 N. J. Eq. 408; Morrill v. Noyes, 56 Me. 458; Hughes v. Wheeler, 66 Ia. 641; Gregg v. Sanford, 24 Ill. 17; Wheeler v. Becker, 68 Ia. 724; Machine Co. v. Elevator Co., 48 Minn. 404; Everyman v. Rob, 52 Miss. 662; Stadecker v. Oeb, 67 Miss. 200.

The recording of the mortgage from Hill Bros. to appellees was notice to both Duran and the El Paso Bank & Trust Co. of appellee's claim upon both the sheep and the wool. Apperson v. Moore, 30 Ark. 56; Fuller v. Rhodes, 78 Mich. 36; Wheeler v. Becker, 68 Ia. 724; Dunn v. Hastings, 54 N. J. Eq. 503.

The acts of the parties showed their intention. Warden v. Hoover, 51 Ia. 491; Hornberger v. Feeder, 30 Miscl. (N. Y.) 121; Scharff v. Meyer, 133 Mo. 428; Clarke v.

Bache, 186 Pa. St. 343; Furniture Co. v. Hill, 87 Me. 22; Grymes v. Sanders, 93 U. S. 1; Allgood v. Bank, 115 Ala. 424; Dean v. Oliver, 131 Ala. 634; Barnes v. Starr, 64 Conn. 158; Coal Co. v. Castile, 68 Ind. 481; Thomas v. McCue, 19 Wash. 293; Booth v. Ryan, 31 Wis. 59; Stevenson v. Allison, 123 Ala. 447; Masson v. Bovet, 43 Am. Dec. 651; Dill v. Camp, 22 Ala. 249; Barnett v. Stanton, 2 Ala. 181; Naugles v. Yerkes, 187 Ill. 364; McCullough v. Scott, 3 B. Monroe, 172.

The law is now established by an overwhelming weight of modern authorities that a mortgage on chattels not acquired at the time the mortgage is given but afterward acquired, is constructive notice to all persons dealing with such chattels. Gregg v. Sanford, 24 Ill. 17; Westinghouse v. Street Ry. Co., 68 S. W. 463; Hurst v. Bell, 72 Ala. 336; Barren v. San Angelo Natl. Bank, 138 S. W. 142; Thurston v. Elevator Co., 13 N. D. 508.

## OPINION OF THE COURT.

PARKER, J.—On the 19th day of March, 1910, the appellees Hill Brothers, and the appellant, Blas Duran, entered into a contract for the sale of some sheep, which is as follows:

"Duran, New Mexico, Mch. 19, 1910.
This agreement made this 19th day of March, 1910, between Blas Duran, of Duran, N. M., and Hill Bros., of Duran, N. M., witnesseth:

That, Blas Duran, in consideration of the sum of five hundred dollars to him cash in hand, agrees to sell and deliver to Hill Brothers at Blas Duran's Ranch in Torrance County, N. M., on the 10th day of April, 1910, about four thousand seven hundred head of mutton, possibly a few more or less.

That Hill Bros. agree to pay to Blas Duran a sum of money equal to four dollars and eighty-five cents per head for each such mutton delivered, less the sum of five hundred dollars above set forth, and no muttons to be refused

or cut out of the herd except those lame, blind or the appearance of being sick.

(Signed) BLAS DURAN, (L. S.)

HILL BROS.,

By P. G. Hill."

On the 31st day of March, 1910, and before the delivery of the sheep specified in the contract, George W. Hill, one of the members of the firm of Hill Brothers, called on the appellees at Kansas City, and applied for a loan of eight thousand dollars, ($8,000.00), offering as security a chattel mortgage on 4,700 head of sheep which he represented that he had bought of Blas Duran in December previous, and that they were in his possession on his ranch in Torrance County. The appellees made the loan and accepted a chattel mortgage on the sheep, which described the property as follows:

"(4700) forty-seven hundred head of four and five-year-old native wethers of an average weight of about 90 pounds, and are the same and identical sheep bought by us in December, 1909, from Blas Duran, of Duran, New Mexico.

"These sheep have no ear marks, or any other brand, and are all of the sheep of every description owned by us at this time, and said sheep can therefore, be idntified by that fact."

The mortgage also recited the following:

"For the purpose of obtaining the money at this time loaned by said second parties and the benefit of future transactions the first parties state that the first parties are the absolute owners of all the above described property, that the same is free from any incumbrance, and that all of the same is now in possession of the said first party at the location as stated above."

The appellee required of Hill an affidavit, which he made and attached to the mortgage as follows:

"G. W. Hill, the mortgagor above mentioned, being sworn, says that the said mortgagors are the legal and absolute owners of the cattle above described, and that the same are now in possession and under their control and the same are now located as hereinbefore recited and

set forth, and that they have full power to sell or mortgage the same and give clear title."

On the 9th of April, following, the appellant, Duran, delivered to Hill Bros., 4,624 wethers, being the sheep referred to and described in the contract of March 9th. The balance due on these sheep, at the contract price; after deducting the $500 referred to in the contract, was $21,-925.40, and for this sum Hill Brothers gave their check to Duran when they received the sheep, and Duran deposited the check on the same day in the Duran Bank & Trust Co., where he kept a deposit. The cashier of the bank, Holloway, received the check and made a deposit slip for the amount, which he marked, "Sub. to collection." Hill Brothers had previously told Holloway that they had made arrangements with the appellees for the money to pay for the sheep, and the money would be furnished as soon as the check and bill of sale executed by Duran could be sent to the appellees at Kansas City. Holloway accordingly, took Duran's bill of sale for the sheep, drew a chattel mortgage on the same sheep to the appellees, which Hill Brothers executed. He then sent the bill of sale and chattel mortgage, accompanied by a draft attached, to the appellees at Kansas City. The appellees returned the papers to Holloway, objecting that the mortgage was not properly drawn, and accompanied their letter with a chattel mortgage drawn by them, covering the same sheep, for execution by Hill Brothers. This second mortgage was executed by Hill Brothers and returned to the appellees at Kansas City, but was again rejected by them. The appellees do not found their rights in this case upon either of these two mortgages last mentioned, but rely upon the chattel mortgage executed on the 31st day of March in Kansas City, mentioned above. The draft not being paid, and there being no money to take care of the check it was returned by Holloway to Duran on the 23rd of April, together with the bill of sale of the sheep to Hill Brothers, which Duran had delivered on April 9th. Duran immediately sought out Hill Brothers, and demanded either the payment of the amount due him or the return of the sheep. They assured him that he was

safe, and asked for a few days time, saying they would get the money, and on the 2nd day of May they paid Duran $2,000 on account, which was deposited to his credit in the Duran Bank by Hill Brothers, and not paid to Duran directly.

On ·the 7th day of May Duran declined to wait any longer unless some kind of a paper was given him restoring the sheep unqualifiedly to his possession. Hill Brothers promised to give him such a paper and Holloway, at Hill Brothers' request, drew up a chattel mortgage and a note securing the balance due of the purchase price to Duran, and the chattel mortgage was sent by Holloway for record and the note was placed in Duran's private box in the bank. Duran testified that he never knew the purport of the chattel mortgage, but was ·led to believe, and did believe, that the paper was in the nature of an admission that he was still the owner and entitled to the possession of the property. Duran is a Mexican and does not speak or understand English.

After about one month's further delay, the money not being forthcoming he consulted an attorney and learned, as he testified, that the paper above referred to was a mortgage of the sheep. He repudiated the transaction as soon as he learned the contents of the mortgage, and delivered the note and mortgage back to Hill Brothers, and demanded a formal instrument restoring possession to him of his sheep, and an actual physical turning back. This was agreed to by Hill Brothers, and on the 28th day of June they executed the following instrument:

"Duran, New Mexico, June 28th, 1910.
"Whereas, we, Hill Brothers, of Duran, New Mexico, a partnership, composed of Geo. W., Luther E., and P. G. Hill on March 19th, 1910, contracted with Blas Duran by instrument in writing to purchase of him about 4,700 head of muttons, same to be paid for in cash on delivery, and whereas, possession of said muttons was delivered to us on April 9th, 1910, with the understanding that they should be paid for at once in cash, and whereas, we have never paid the said Blas Duran for said sheep, except

$2,500 and there is still due from us $20,095.40, which we are unable to pay, and he having demanded of us, that we immediately pay the same or return to him the possession of said sheep and wool.

We do therefore, hereby release and surrender possession of said sheep and wool to the said Blas Duran, and direct and authorize any and all persons in charge or possession of the same to return said sheep and wool to him to that end that he may assert such rights in them as he may have under the circumstances above set forth.

Witnesseth our hands at Duran, aforesaid, this 28th day of June, 1910.

"(Signed) HILL BROS.,
"By Geo. W. Hill,
"GEO. W. HILL,
"LUTHER E. HILL."

This was a formal surrender of possession, by direction to the herders in charge of the sheep in the field. At the time possession was surrendered to Duran of the sheep he gave to Hill Brothers an agreement to sell the sheep and wool to them at any time within forty days thereafter, upon payment of the balance due upon the original agreed price and interest.

After the delivery of the sheep to Hill Brothers on April 9th, and before the return to Duran of his bill of sale and the dishonored check, Hill Brothers sheared the sheep, stored their fleece in a public warehouse at Duran and took warehouse receipts therefor. They then sought a loan from the appellant, El Paso Bank & Trust Co., and offered the warehouse receipts and the wool as security for the loan of $10,000.00. The bank made them this loan, taking an assignment of the warehouse receipts as security, and in addition a chattel mortgage upon the wool, the bank having no actual knowledge or notice of any alleged rights of the appellees. Hill Brothers then became bankrupt and the appellees brought this action to foreclose the mortgage of March 31st, 1910, above mentioned, which resulted in a decree establishing the mortgage of appellees as a lien prior to both the mortgage

of Duran upon the sheep, and that of the El Paso Bank & Trust Co. upon the wool.

It is apparent that Hill Brothers had no title or possession at the time of the execution of the mortgage to the appellees. They had merely a contract for the purchase of forty-seven hundred head of sheep, upon which they had paid the sum of $500. The whole record clearly shows that the transaction between Duran and Hill Brothers was, in its inception, a cash transaction. Counsel for appellees contends that the taking of the deposit slip marked "sub-collection" was notice to Duran that the check was not paid, and changed the transaction from a cash transaction to a credit transaction, and that the title then passed to Hill Brothers and became subject to their mortgage. But we do not so understand the law. There is nothing in the conduct of the parties which shows that they understood the transaction to have been changed to a credit transaction. If Duran knew the check was not paid but was taken for collection by the bank, which he denies, this was not alone sufficient to change the character of the understanding. There is no evidence that Duran ever parted with his title, or intended to surrender his ownership unconditionally, and to become a creditor of Hill Brothers, but on the contrary all the evidence shows that payment was always a condition precedent to the passing of title so far as he was concerned. The transaction was not disclosed so long as the purchase price remained unpaid. Upon the return of the check, dishonored, the bill of sale which he had executed to Hill Brothers was also returned to Duran and, so far as the record discloses, no claim was ever made by Hill Brothers for a return of the same to them and no claim was even made by them to own the property. Duran, upon the return of the check and bill of sale, became insistent and secured from Hill Brothers a further payment on the contract of $2,000, and, after a few days of further delay, he became uneasy and demanded payment at once of the balance of the purchase price, or, as he says, some paper to show his ownership and right to possession of the property. Thereupon Holloway prepared a note and chattel

mortgage for the balance of the purchase price and sent the mortgage for record. Duran claims he did not know the purport of the mortgage, but the court found otherwise.

Assuming that Duran knowingly accepted the note and mortgage, what then is the status of appellees 'and Duran's mortgage as to priority? Up to the time of taking of the mortgage by Duran, if he knowingly took the same, neither he nor Hill Brothers had intended that the title should pass to the latter. It was at this time, if at all, that Duran first consented to the passing of the title to the property and the taking of a lien back upon the same. Therefore the title went to Hill Brothers, charged with the lien of Duran's mortgage, and it is to this title, so charged with this incumbrance, that the mortgage of the appellees attached, if at all.

A leading case on this subject is U. S. v. New Orleans Railroad, 79 U. S. 362, in which it is said:

"The appellants contend, in the next place, that the decision upon the facts was erroneous; that the mortgages, being prior in date to the bond given for the purchase-money of these locomotives and cars, and being expressly made to include after-acquired property, attached to the property as soon as it was purchased, and displaced any junior lien. This, we apprehend, is an erroneous view of the doctrine by which after-acquired property is made to serve the uses of a mortgage. That doctrine is intended to subserve the purpose of justice, and not injustice. Such an application of it as is sought by appellants would often result in gross injustice. A mortgage intended to cover after-acquired property can only attach itself to, such property in the condition in which it comes into the mortgagor's hands. If that property is already subject to mortgages or other liens, the general mortgage does not displace them, though they may be junior to it in point of time. It only attaches to such interest as the mortgagor acquires; and if he purchase property and gives a mortgage which is for the purchase money, the deed which he receives and the mortgage which he gives are regarded as one transaction, and no general lien impend-

ing over him, whether in the shape of a general mort-gage, or judgment, or recognizance, can displace such mortgage for purchase-money. And in such cases a failure to register the mortgage for purchase-money makes no difference. It does not come within the reason of the registry laws. These laws are intended for the protection of subsequent, not prior, purchasers and creditors."

In Walker v. Vaughn, 33 Conn. 577, the facts were exactly like the facts in the case at bar, and it was there held that the purchase money mortgage, although junior in time, had precedence over the prior mortgage.

In Farmers' Loan & Trust Co. v. Denver, 126 Fed. 46, the same principle is recognized, as follows: "A mortgage of future acquired property attaches to the interests obtained by the mortgagor only, and is inferior to junior liens, incumbrances or equities under which the property comes to the mortgagor."

See also Hammel v. Bank of Hancock, 129 Mich. 176, to the same effect.

There was manifest error, therefore, by the court below in decreeing priority of lien in favor of appellees If Duran in fact accepted the mortgage and passed the title to Hill Brothers, he has a priority of lien over the lien of appellees in the amount of such mortgage.

This case presents an unusual state of facts. The mortgage to appellees does not purport to deal with property to be acquired in the future. It purports to operate in presenti on property recited to be then owned by the mortgagors and to be then in their possession. Both of these recitals were false.

While the document is in the form of a chattel mortgage, it was wholly inoperative at the time it was executed and delivered. At that time the mortgagors had no interest, actual or potential, in the property. The property was Duran's. The contract to purchase the same conveyed no interest in the property. The sole right acquired by Hill Brothers under that contract was a right to damages in case Duran refused to comply with its terms. Not until May 7th, 1910, when the chattel mortgage was given

to Duran by Hill Brothers, and the title to the property was passed to them, if it was, could the mortgage to appellees have any operative effect as a mortgage.

Under what principle of law, then, did the mort-gage become operative? It cannot be placed upon the ground that equity will construe the document as an executory contract to give a mortgage because this would make a contract for the parties which they had never made for themselves. It must be placed upon the doctrine of estoppel by misrepresentation. The mortgagor, in such a case will be estopped to assert the truth of his lack of ownership to the detriment or in fraud of his mortgagee.

16 Cys. 692, Watkins v. Cranshaw, 59 Mo. App. 183. Hickman v. Dill, 39 Mo. App. 246. Wellever v. Shingle Co., 75 Pac. 863. It is alone upon this principle that the mortgage to appellees can have any operative effect whatever.

A case of this kind differs from those cases where the mortgage purports to cover property to be acquired in the future. In those cases there is a plain intent manifested to charge future property with a mortgage lien as soon as acquired by the mortgagor and equity, regarding "that done which ought to be done," construes the mortgage as a continuing contract to mortgage, executes the contract and enforces the lien. 6 Cyc. 1052. 3 Pomeroy's Eq. Juris., secs. 1236, 1288. Burrill v. Whitcomb, 100 Me. 286; 61 Atl. 678; 109 A. S. R. 498 and note. Moody v. Wright, 13 Metcalf, 46 A. D. 706 and note. Deeley v. Dwight, 18 L. R. A. 298 and note.

The distinction between these two classes of cases is clearly pointed out in Pennock v. Coe, 64 U. S. 117. In speaking of mortgages without title, the court says:

"The thing itself is an impossibility. It may, at once, therefore be admitted, whenever a party undertakes, by deed or mortgage, to grant property, real or personal, in presenti, which does not belong to him, or has no existence, the deed or mortgage, as the case may be, is inoperative and void, and this either in a court of law or equity. But the principle has no application to the case before us.

The mortgage here does not undertake to grant, in presenti, property of the company not belonging to them or not in existence at the date of it, but carefully distinguishes between present property and that to be afterwards acquired."

See also Bank v. Taylor, 98 Ia. 631, and New England Natl. Bank v. Northwestern Natl. Bank, 60 L. R. A. 256.

But in this case an equitable estoppel or estoppel in pais arises by reason of the misrepresentation of the mortgagors, Hill Brothers, as to their then present title, and the question is as to who are bound by the estoppel. It is commonly said that an estoppel of this kind binds not only parties but privies.

16 Cyc. 778. 11 A. & E. Ency. S. 2nd ed. 439; 2nd Pomeroy's Eq. Juris, sec. 813.

That Hill Brothers, the mortgagors, are bound is, of course, to be assumed without question, they having done the acts out of which the estoppel arises.

Privity has been many times defined. Six words and phrases—"Privity." 16 Cyc. 716; 23 A. & E. Ency. L., 2nd ed. 101. It is most generally defined as a mutual or successive relationship to the same right of property.

Privies are usually classified as privies in blood, as heir to ancestor, in law as in the case of Escheates and in the Estate as donors and donee, lessor and lessee. Pomeroy Classifies privies affected by equitable estoppel as privies by blood, estate or contract. 2 Pomeroy Equity, Juris. 813. In the present case we are only concerned with the meaning of "Privies in estate," there being no privity in blood or law, between the parties. In the sense of succession to rights in the same property, all of the parties in this cause may be said to be in privity. The title to the property was original in the appellant, Duran, and passed to Hill Bros., at the time of the taking by him of the chattel mortgage. It was reconveyed or released to Duran in June following by the document heretofore mentioned. The appellees claim through Hill Brothers, as does the appellant, El Paso Bank & Trust Co.

"But privity in estoppel of this kind has a much nar-

rower meaning than its general definition would enforce. Privies in this connection means more nearly participants in the act of misrepresentation or fraud out of which the estoppel arises. The participation may be direct, as where the parties actually agreed to permit the fraud. It may be indirect by way of adoption of the act or fraud of the persons estopped, as where there is notice of estoppel by the privy. Where there is want of consideration the estoppel rests upon a different principle, that is, that the privy having parted with nothing of value ought not to prevail over the equity in favor of the person asserting the estoppel. The proposition resolves itself then into determining who are bound as privies in estate by an equitable estoppel such as this, into a question as to whether a privy is a bona fide purchaser, that is, a purchaser for value without notice. The statement then in the books that privies in estate are bound by an estoppel of this kind is necessarily misleading. It is only privies who take with notice or without value who are bound.

It is difficult to lay hand on precedent for some of the forms of statement just made, but they are in accordance with sound and well recognized equitable principles, and would seem to leave the subject free from all obscurity.

For an interesting discussion of the proposition, see Ewart on Estoppel, pp. 196-208, citing many English and American cases. See also Bigelow on Estoppel, 3rd ed., p. 518.

It therefore becomes necessary to examine the question of notice to appellants.

It is apparent that appellants each parted with value when they acquired their respective interests in the property, the El Paso Bank & Trust Co., loaned $10,000.00 when they took their mortgage. Duran surrendered the chattel mortgage and a subsisting demand for a large sum of money when he took the release or reconveyance of the sheep. Neither was there any actual notice to either of the appellants of the claims or rights of appellees.

The question then is as to the effect of the recording statute in regard to notice. It may be stated generally that the record of such instruments only as are authrized

or required to be recorded, give constructive notice. 2 A. & E. Ency Law, 141. Our statute on this subject is as follows:

"That hereafter all chattel mortgages, or other instruments of writing having the affect of a mortgage or lien upon personal property, shall be acknowledged by the owner or mortgagor and recorded in the same manner as conveyances effecting real estate." C. L. 1897, sec. 2361.

It is to be constantly borne in mind that this paper executed by Hill Bros. to appellees and by them recorded, is not a chattel mortgage at all, although such in form. A chattel mortgage conveys some present legal or equitable right in personal property as security, as payment of money or the performance of some act. 6 Cyc. 985.

This instrument conveyed no legal or equitable interest in the property nor did it create an equitable lien on the property. The most that can be said for it is that it created an equity in favor of the appellees arising out of the estoppel by misrepresentation. Does such an instrument fall within the purview of the statute? We think it may well be doubted.

But assuming that it might be held to fall within the terms of the statute another principle intervenes to preclude constructive notice to appellants. Instruments are required to be recorded so that notice of the rights of the parties thereunder may be given to all the world. 24 A. & E. Ency. 146. The record, it is said, gives notice not only of the facts actually recited, but of those to which it reasonably suggests inquiry. 24 A. & E. Ency., 2nd ed. 151. N. W. Bank v. Freeman, 171 U. S. 620. In the case cited the record of prior chattel mortgage of which the parties were bound to take notice, contained a recital as to other prior mortgages, and was held to give notice to the latter. But assuming that an inquirer saw and examined the record, and went out to ascertain the facts, he would have found that no such transaction as that recited in appellees' alleged mortgage ever took place between Duran and Hill Bros. He would have found that Hill Bros. bought no sheep from Duran in December, 1909, and that Hill Bros. had no sheep in their possession when they executed

the paper to appellees. The record gives no clue to any transaction about sheep in March and April, 1910. In order to find any equitable rights for appellees, he would have to contradict the record by convicting Hill Bros. of falsehood and fraud. The law makes no such requirements. An investigator may certainly rely upon the truth of the recitals of a record where they are specific as they were in this case. 24 A. & E. Ency. 151.

The absurd consequence of a contrary holding, are apparent. If such a paper is to give constructive notice, then before a man dare to sell his personal property to another, he must search the record and ascertain whether his vendee has not in some way created some equity in favor of some other party by some sort of bogus or fraudulent mortgage. Such cannot be the law. It is only after title or interest has been acquired that a person may mortgage chattels, and it is only from that time that records need be searched for incumbrances by the purchaser. A similar doctrine is well recognized in real estate conveyances. 2 Pomeroy Eq. Juris. sec. 658; Ford v. Unity Church, 23 L. R. A. 561, and note. It is to be noted in this connection that what has just been said is intended to be applicable only to instruments in the form of chattel mortgages executed by parties without title, and which purport to operate in presenti and which do not purport to mortgage property to be acquired in the future.

It follows from what has been heretofore said as to the appellant Duran, the judgment of the lower court was erroneous. The record of the alleged chattel mortgage to the appellee was not constructive notice to him, and, if he in fact sold the sheep to Hill Brothers, taking back a chattel mortgage and if so with knowledge of the contents of said chattel mortgage, as the court below found, nevertheless, he still had a prior lien on the property as against appellee, and when he took the reconveyance from Hill Brothers he was a bona fide purchaser for value without notice and has a superior right to that of the appellees.

The case of the appellant, El Paso Bank & Trust Co., is somewhat different. On April 28th, 1910, it took an assignment of the warehouse receipts for, and a chattel

mortgage upon the wool stored at Duran in a warehouse. At this time, as we have before seen, Duran owned the wool. But he had placed Hill Bros. in possession, and had clothed them with the power to impose upon others· by assuming ownership of the wool. Under such circumstances the mortgage was given to the El Paso Bank & Trust Co. The appellants admit that Duran might be estopped to claim the wool as against the El Paso Bank & Trust Co.

But as between it and appellees, a different question arises. It depends upon whether it has a superior equity to that of the appellees, Hill Brothers, having no title when either of the mortgages were executed to these parties, could create only an equity in favor of each by their respective mortgages. If the equities of the parties are equal, that of the appellee will prevail, being prior in time. But are they equal? Appellees were at least negligent when they took their mortgage. They made no inquiry as to the condition of the property, at least none is shown. The mortgagors were not in possession and had no appearance of ownership. But when the appellant, El Paso Bank & Trust Co., took its mortgage, the mortgagors were in possession with all the indicia of ownership and in possession of warehouse receipts for the property. The Bank made inquiry as to the actual presence of the property in the warehouse. It at least was not negligent.

Another consideration would seem to give the equity of the El Paso Bank & Trust Co. superiority. It acquired its equity under such circumstances, that Duran, the true owner, was estopped to assert his ownership, which situation may be construed to be the equivalent of an agency in Hill Bros. to dispose of the title. In this connection it is to be noted that no question of estoppel exists between appellees and appellants, they never having come in contact in any way whatever.

Under such circumstances, we think, and so hold that the equity of the appellant, El Paso Bank & Trust Co. is superior to that of the appellees, and disturbs what would otherwise be the order of priority.

It therefore appears that the District Court erred in

holding the alleged chattel mortgage of the appellees to
be a prior and superior lien upon the wool to that of the
appellant, the El Paso Bank & Trust Co.    The decree of
the District Court will therefore be reversed and the cause
will be remanded to the District Court with instruction
to proceed in accordance with this opinion, and, it is so
ordered.

### SYLLABUS (BY THE COURT).

